586 F.2d 1275
 1978-2 Trade Cases 62,362
 TOP VALUE MEATS, INC.; Guaranteed Quality Meats, Inc.; Twin
City Beef Company; Prime Meats, Inc.; Freezer
World, Inc.; and Midwestern Meat
Processors, Inc., Appellants,
v.
FEDERAL TRADE COMMISSION; Louis A. Engman; Paul Rand Dixon;
Mayo J. Thompson; M. Elizabeth Hanford; Stephen
Nye; and F. Kelly Smith, Appellees.
UNITED STATES of America, Appellee,
v.
GUARANTEED QUALITY MEATS, INC., Appellant.
 No. 77-1799.
 United States Court of Appeals,
Eighth Circuit.
 Submitted July 14, 1978.
Decided Nov. 16, 1978.
 
 Patrick Faltico of Faltico, Bertram, Bony & Associates, Kansas City, Mo., argued, for appellant; James Wyrsch, Kansas City, Mo., on brief.
 Denis E. Hynes, Atty., Federal Trade Commission, Washington, D. C., argued, for appellees.
 Ronald S. Reed, Jr., U. S. Atty., E. Eugene Harrison, Asst. U. S. Atty., Kansas City, Mo., John H. Shenefield, Asst. Atty. Gen., Antitrust Div., Charles R. McConachie, Chief, Consumer Affairs Section, James A. Calderwood, Atty., Consumer Affairs Section, U. S. Dept. of Justice, Washington, D. C., on brief, for appellees; Michael N. Sohn, Gen. Counsel, Gerald P. Norton, Deputy Gen. Counsel, W. Dennis Cross, Asst. Gen. Counsel, F. T. C., Washington, D. C., of counsel.
 Before GIBSON, Chief Judge, HENLEY, Circuit Judge, and EISELE, Chief District Judge.*
 HENLEY, Circuit Judge.
 
 
 1
 This is an appeal from a summary judgment rendered by the United States District Court for the Western District of Missouri (Senior District Judge William H. Becker) in favor of the Federal Trade Commission in litigation between the Commission and six corporations which are or have been engaged in the freezer meat business in the Kansas City area.[1] The corporations are identified as Top Value Meats, Inc.; Guaranteed Quality Meats, Inc.; Twin City Beef Company; Prime Meats, Inc.; Freezer World, Inc.; and Midwestern Meat Processors, Inc.
 
 
 2
 In early 1974 the Commission, acting under the authority of § 6 of the Federal Trade Commission Act, 15 U.S.C. § 46, launched an investigation to determine whether fraudulent and deceptive practices were being carried on in the freezer meat industry in violation of § 5 of the Act, 15 U.S.C. § 45. The corporations above mentioned were subjects of the investigation, and the investigation extended to other corporations and to an individual, Patrick R. Faltico, a Kansas City lawyer and business man who has been closely connected with the freezer meat business in Missouri and Illinois.[2]
 
 
 3
 In late 1974 the Commission called on the meat companies that have been mentioned to file special reports, as provided by § 6(b) of the Act, setting out under oath detailed information with respect to the organization, business, conduct, practices, and management of the respective meat companies and also describing their relationships with other business enterprises.
 
 
 4
 One of the companies, Guaranteed Quality Meats, Inc. (Guaranteed), filed a motion with the Commission to quash the order calling for a special report from Guaranteed. The Commission denied that motion. None of the other companies sought any administrative relief from the report requirements, and none of the six companies complied with the requirements within the time prescribed by the Commission.
 
 
 5
 In due course the Commission issued to the respective companies notices of default demanding that they comply with the report requirements within thirty days. The companies did not comply with those notices, and their failure triggered at the end of the thirty day period the per diem penalties of $100.00 per day prescribed by the third paragraph of § 10 of the Act, 15 U.S.C. § 50.
 
 
 6
 Before any government action had been taken to enforce the report requirements or to collect accrued and accruing penalties the meat companies filed six separate suits in the district court seeking to enjoin the enforcement of the report requirements. The defendants in the cases were the Commission itself, the individual members of the Commission and the Commission's staff attorney who was handling the investigation at the time. We will refer to the defendants collectively as the "Commission."[3]
 
 
 7
 The Commission answered the complaints and denied that the plaintiffs were entitled to any relief. The Commission also filed counterclaims seeking enforcement of its orders and the collection of the $100.00 per day penalties prescribed by § 10 of the Act.
 
 
 8
 For a reason that is not material here, the United States commenced an action in its own name against Guaranteed to enforce the Commission's order and to collect the per diem penalties.[4] Guaranteed answered and denied that the government was entitled to any relief and also filed a counterclaim for damages based on alleged abuse of process.
 
 
 9
 After various preliminary proceedings, the cases, or at least the first six of them, were finally submitted to the district court on motions for summary judgment pursuant to Fed.R.Civ.P. 56.[5]
 
 
 10
 Summary judgment in favor of the Commission was granted on November 27, 1976. The complaints of the meat companies were dismissed, and the Commission was granted judgment on its counterclaims. The judgments in favor of the Commission were to the effect that the meat companies were to comply with the report requirements by a date set by the court and were to pay the § 10 per diem penalties.
 
 
 11
 The meat companies sought post-judgment relief on a number of grounds. One of their contentions was that the Commission's investigation had not been undertaken in good faith but rather for the sole and impermissible purpose of developing evidence to be used in possible criminal prosecutions of the meat companies and some of the individuals in control of them, including Faltico and John Patrick Cuezze who was the president and ostensibly the sole stockholder of Guaranteed.
 
 
 12
 Judge Becker held an evidentiary hearing on the particular contention just mentioned and found it to be without merit. We find it convenient at this point to say that the judge's finding has substantial evidentiary support, is not clearly erroneous, and is upheld by us. Other questions in the case will be considered in more detail.
 
 
 13
 The post-judgment motions of the meat companies were finally overruled by the district court on July 1, 1977. Since the government and one of its agencies were involved, the companies had sixty days within which to appeal to this court. Fed.R.App.P. 4(a). That sixty day period expired on August 30, 1977.
 
 
 14
 On that day the meat companies filed timely notice of appeal in the cases wherein they had been plaintiffs. But, for some reason no appeal was taken by Guaranteed in the case in which it had been a defendant.
 
 
 15
 On September 9 the meat companies, including Guaranteed, filed an amended notice of appeal for the purpose of making Guaranteed an appellant in the seventh case in which case it had been the defendant.
 
 
 16
 The amended notice was filed after the expiration of the sixty day appellate period. There is no suggestion that the meat companies ever received any permission from the district court or from this court to amend their original notice or notices of appeal, and there is no suggestion that Guaranteed's time to appeal in No. 75CV578-W-2-3 was ever extended by the district court or that any extension of time was ever requested.
 
 I.
 
 17
 The Federal Trade Commission Act was passed originally in 1914 and appears as 15 U.S.C. § 41 Et seq. The Act has been amended frequently, and it was substantially amended in 1973 and again in 1975.[6] Those amendments taken together substantially broadened the Commission's regulatory jurisdiction and also increased the powers of the Commission to enforce the provisions of the Act and of its orders in actions prosecuted or defended in its own name without recourse to the Department of Justice.
 
 
 18
 As far as jurisdiction is concerned, the original Act limited the Commission's jurisdiction to business enterprises that were engaged "in interstate or foreign commerce." The 1975 amendments extended the Commission's jurisdiction to businesses, the activities of which were either "in" or which "affected" interstate or foreign commerce. P.L. 93-637, § 201(a), 15 U.S.C. § 45(a) (1978).[7]
 
 II.
 
 19
 We take up, first, the belated attempt of the meat companies to join Guaranteed as an appellant in the seventh case in which the government was plaintiff and Guaranteed was the defendant and counter-claimant. In view of the procedural chronology that has been set out, we consider that Guaranteed's appeal in the seventh case is untimely. Moreover, we do not think that we have an appealable order in that case.
 
 
 20
 The counterclaim was based on alleged abuse of process by the government and sounded in tort. Prior to filing the counterclaim Guaranteed made no effort to obtain administrative relief as required by the Federal Tort Claims Act, 28 U.S.C. § 2671 Et seq., specifically § 2675. When the government moved to dismiss the counterclaim for that reason, the district court severed the counterclaim from the principal claim and gave the counterclaim a separate docket sub-number. And the district court also called on Guaranteed to show cause why the counterclaim should not be dismissed.
 
 
 21
 The order just mentioned was entered on October 26, 1976, and as far as we can tell from what is before us, that was the last order entered in the seventh case. We are advised that the counterclaim in that case is still pending under its docket sub-number, and we are not advised that any judgment on the principal claim of the government in that case has ever actually been entered. The principal order of the district court which produced this appeal originally was filed in late November, 1976. That order refers specifically to the first six cases, including the one in which Guaranteed was plaintiff, but it makes no mention of the seventh case in which Guaranteed was the defendant.
 
 
 22
 We assume, however, at least for purposes of discussion, that the November, 1976 order and the later order that was entered in 1977 were broad enough to include and were intended to include the principal claim of the government against Guaranteed in the seventh case. However, those orders did not dispose of Guaranteed's counterclaim, and the district court made no finding or determination of finality with respect to the principal claim as provided by Fed.R.Civ.P. 54(b). Thus, the order or judgment, if any, in favor of the government in the seventh case is not appealable. 9 Wright & Miller, Federal Practice & Procedure, § 2392, pp. 304-05.
 
 
 23
 So, Guaranteed's attempted appeal in the seventh case will be dismissed for lack of jurisdiction.
 
 III.
 
 24
 We now consider the first six cases in which the meat companies are plaintiffs and the Commission is the defendant and counterclaimant. In the district court the companies advanced many contentions in opposition to the report requirements of the Commission, and they advance essentially the same contentions here. Judge Becker dealt with those contentions in a well organized, well reasoned, and detailed opinion with which we find ourselves in agreement.
 
 
 25
 Specifically, we agree with the district court that the meat companies were subject to the investigative jurisdiction of the Commission, that they were not exempt from that jurisdiction by virtue of the Packers & Stockyards Act, Cf. Blue Ribbon Quality Meats, Inc. v. Federal Trade Commission, 560 F.2d 874, 875-76 (8th Cir. 1977), that they received proper and adequate notices of the report requirements, and that those requirements were not unreasonable or overbroad.
 
 
 26
 As to procedure, we are satisfied that the district court did not err in consolidating the cases and in not compelling the Commission to provide the detailed discovery sought by the companies.
 
 
 27
 The ultimate question is whether the district court erred in granting summary judgment in favor of the Commission. The district court was required, of course, to view the case in the light most favorable to the companies, to give them the benefit of all reasonable inferences favorable to them, and to deny summary judgment unless satisfied that the record established beyond controversy that the case presented no genuine issue as to a material fact and that the Commission was entitled to judgment as a matter of law. Weber v. Towner County, 565 F.2d 1001 (8th Cir. 1977), and cases cited.
 
 
 28
 Apart from the question of the motivation of the Commission in undertaking the investigation, which question the district court disposed of properly, and apart from any question of the propriety of awarding the Commission judgment for the per diem penalties, which question we will discuss presently, we are satisfied that the case presented no genuine issue as to any material fact, and that summary judgment in favor of the Commission was proper. In our opinion the district court was correct in dismissing the complaints of the meat companies, and in ordering those companies to submit the reports that the Commission had required.
 
 IV.
 
 29
 In the course of the argument on appeal we raised the question of whether the district court erred in awarding the § 10 penalties to the Commission on its counterclaims. That question had not been raised in the district court and was not discussed in the original appellate briefs. After the arguments the Commission sought leave to file a supplemental brief. We granted that leave; the Commission filed its supplemental brief, and the meat companies filed a brief in reply. Those briefs have been considered.
 
 
 30
 The problem arises from the fact that while the suits filed by the meat companies were defended and while the Commission's counterclaims were prosecuted by counsel for both the Commission and the Department of Justice (including the United States Attorney for the Western District of Missouri and members of his staff) working in cooperation, the government itself has never been a party to the first six cases.
 
 
 31
 The third paragraph of § 10 of the Act, as amended by the Act of January 4, 1975, P.L. 93-637, Title II, § 203(c), 88 Stat. 2199, contains its own enforcement provision and is as follows:
 
 
 32
 If any persons, partnership, or corporation required by sections 41 to 46 and 47 to 58 of this title to file any annual or special report shall fail so to do within the time fixed by the Commission for filing the same, and such failure shall continue for thirty days after notice of such default, the corporation shall forfeit to the United States the sum of $100 for each and every day of the continuance of such failure, which forfeiture shall be payable into the Treasury of the United States, and shall be recoverable in a civil suit in the name of the United States brought in the case of a corporation or partnership in the district where the corporation or partnership has its principal office or in any district in which it shall do business, and in the case of any person in the district where such person resides or has his principal place of business. It shall be the duty of the various United States attorneys, under the direction of the Attorney General of the United States, to prosecute for the recovery of forfeitures. The costs and expenses of such prosecution shall be paid out of the appropriation for the expenses of the courts of the United States.
 
 
 33
 Since the government did not sue for the penalties in its own name, except in the seventh case, and since it did not intervene in the first six cases in connection with the counterclaims filed by the Commission, it is clear to us that the district court was not justified in awarding the penalties to the Commission on the basis of § 10 of the Act, as amended.
 
 
 34
 Some encouragement for the Commission is to be found in the 1975 amendment to § 16 of the Act. Act of January 4, 1975, Supra, § 204(a). Prior to the adoption of the 1973 and 1975 amendments to the Act, § 16 simply did not apply to § 10 per diem penalties. The original section provided that penalties incurred under § 5(L ) or § 14 of the Act should be recovered at the suit of the Attorney General upon receipt of a certification from the Commission that it had reason to believe that penalties under one or both of the sections just mentioned had been incurred. In United States v. St. Regis Paper Co., 355 F.2d 688 (2d Cir. 1966), it was held that a certification to the Attorney General by the Commission was a jurisdictional prerequisite to suit by the former, and that the Attorney General had no right to file suit for the penalties in the absence of such certification.
 
 
 35
 Amended § 16 is broader than the original section. As now written, § 16(a)(1) provides:
 
 
 36
 (a)(1) Except as otherwise provided in paragraph (2) or (3), if
 
 
 37
 (A) before commencing, defending, or intervening in, any civil action involving this chapter (including an action to collect a civil penalty) which the Commission, or the Attorney General on behalf of the Commission, is authorized to commence, defend, or intervene in, the Commission gives written notification and undertakes to consult with the Attorney General with respect to such action; and
 
 
 38
 (B) the Attorney General fails within 45 days after receipt of such notification to commence, defend, or intervene in, such action;
 
 
 39
 the Commission may commence, defend, or intervene in, and supervise the litigation of, such action and any appeal of such action in its own name by any of its attorneys designated by it for such purpose.
 
 
 40
 Counsel for the Commission and for the Department of Justice concede, as they must, that there was no literal compliance with the notice and forty-five day delay requirements of amended § 16. They argue, however, that this noncompliance should not prohibit the Commission from collecting the penalties on the basis of its counterclaims. Counsel say that the noncompliance was not of jurisdictional magnitude, that there was in fact substantial compliance with § 16(a)(1) in that the Department of Justice was well aware of what was going on, and that the counterclaims were prosecuted jointly by counsel for the Commission and counsel for the Department. It is contended that to reverse the district court's awards would be to elevate form over substance, which should not be done.
 
 
 41
 The trouble with that argument is that we are concerned here with statutory penalties, and statutes imposing such penalties should be construed with some strictness. We think that when Congress imposes penalties and prescribes the means whereby and the conditions under which those penalties are to be collected, there must be strict compliance with the procedures prescribed by Congress. Cf. United States v. St. Regis Paper Co., supra.
 
 
 42
 Counsel for the Commission profess and should possess expertise in Commission matters, including legislation affecting the Commission and litigation which involves or may affect the Commission in the enforcement of the Act. Counsel will not be heard to say that they were not familiar with the provisions of § 16(a)(1). The Commission, as a government agency, had sixty days within which to answer the complaints and within which to file such counterclaims as might be required or proper. In this case it should have been easy for the Commission to comply with the requirements of § 16(a)(1). Had the Commission done so, the Attorney General could have decided either to intervene in the cases and claim the penalties involved on behalf of the government itself, or he could have decided to stay out of the litigation, in which case the filing of the counterclaims by the Commission would have been appropriate. The notice was not given; and the government did not intervene in the original case or file any suits of its own except the seventh case in which Guaranteed was the defendant.
 
 
 43
 Almost sixty years ago, a corporate taxpayer filed a suit against the United States in the Court of Claims seeking an adjudication of its federal income tax liabilities. The suit was filed without the taxpayer having paid the assessed taxes and claimed refunds as the Internal Revenue Code required, and still requires. The Court of Claims dismissed the complaint, and its action was affirmed by the Supreme Court in an opinion written by Justice Holmes, who said: "Men must turn square corners when they deal with the Government. If it attaches even purely formal conditions to its consent to be sued those conditions must be complied with. . . ." Rock Island, Arkansas & Louisiana R.R. Co. v. United States, 254 U.S. 141, 143, 41 S.Ct. 55, 56, 65 L.Ed. 188 (1920).
 
 
 44
 Here, the question is whether the Commission can maintain in its own name, either by direct action or by way of counterclaim, a suit for per diem penalties imposed under § 10 of the Act without compliance with the notice and delay requirements of § 16(a)(1). We answer that question in the negative.
 
 
 45
 In our view, where dealings between the government or one of its agencies, on the one hand, and individuals or corporations, on the other hand, are involved, the obligation "to turn square corners" or "to turn corners squarely" is not unilateral. It rests on the government as well as on the individual with whom or the entity with which the government has dealt.
 
 
 46
 To sum up: The attempted appeal by Guaranteed in the case that was docketed in the district court as No. 75CV578-W-2-3 is dismissed. In the original six cases the judgment of the district court is affirmed to the extent that it dismisses the complaints of the meat companies and to the extent that it orders those companies to comply with the special report requirements of the Commission.[8] To the extent that the judgment of the district court on the Commission's counterclaims orders the meat companies to pay the § 10 penalties to the Commission, the judgment is reversed without prejudice to future appropriate action.
 
 
 47
 Appeal dismissed in part. Judgment of district court affirmed in part and in part reversed and cause remanded for further proceedings not inconsistent with this opinion.
 
 
 
 *
 The Honorable G. Thomas Eisele, Chief United States District Judge, Eastern District of Arkansas, sitting by designation
 
 
 [1]
 The "freezer meat" business which involved among other things the sale of meat to be placed in home freezers is discussed in some detail in Bruhn's Freezer Meats of Chicago, Inc. v. United States Dept. of Agriculture, 438 F.2d 1332 (8th Cir. 1971)
 
 
 [2]
 Mr. Faltico is the appellant in the case of United States v. Faltico, 586 F.2d 1267, which is related to this case and which involves records of an Illinois corporation, now dissolved, which was known as Top Value Meats, Inc. That case and this one were argued together and were heard by the same panel of the court
 We note that investigations of the freezer meat industry by the Commission and by the Department of Justice in recent years have produced a good deal of litigation in the Western District of Missouri, and there have been appeals to this court. See Federal Trade Commission v. Packers Brand Meats, Inc., 562 F.2d 9 (8th Cir. 1977); In re Grand Jury Subpoena for Patrick Faltico, 561 F.2d 109 (8th Cir. 1977); Blue Ribbon Quality Meats, Inc. v. Federal Trade Commission, 560 F.2d 874 (8th Cir. 1977). Those cases have involved efforts on the part of the meat companies to avoid disclosures demanded by the Commission and by the federal grand jury for the Western District of Missouri. The grand jury and the Department of Justice have been interested in the question of whether the proceeds of racketeering activities have been invested in the interstate meat industry in violation of 18 U.S.C. § 1962.
 
 
 [3]
 The six original cases are identified by the following district court docket numbers: 75CV350-W-3; 75CV351-W-3; 75CV352-W-4-3; 75CV353-W-3; 75CV354-W-2-3; and 75CV355-W-3
 
 
 [4]
 That case was docketed in the district court as 75CV578-W-2-3
 
 
 [5]
 It is not clear to us from the Appendix supplied by the parties whether the United States ever filed a motion for summary judgment in the suit that it had commenced against Guaranteed
 
 
 [6]
 The 1973 amendments appear as Title IV of the Trans-Alaska Pipeline Authorization Act. Act of November 16, 1973, P.L. 93-153, 87 Stat. 576, § 408
 The 1975 amendments appear as Title II of the Magnuson-Moss Warranty-Federal Trade Commission Improvement Act of 1975, Act of January 4, 1975, P.L. 93-637, 88 Stat. 2183, § 201 Et seq.
 
 
 [7]
 We have already referred adequately to the provisions of § 5 which prohibit unfair trade practices, to the investigatory powers of the Commission under § 6, and to the per diem penalties that may be incurred under § 10. We will point out that the Commission has never filed a § 5 complaint against any of the meat companies and has never issued a cease and desist order against any of them
 
 
 [8]
 The original period fixed by the district court for the filing by the meat companies of the reports called for by the Commission has long since expired. Assuming that the reports were not in fact filed during the prescribed period, and assuming further that the Commission is still interested in having the reports, the district court will be free to prescribe a new filing period if requested to do so by the Commission. We note, however, that it was rather strongly indicated in the arguments before us that the Commission is no longer interested in receiving the reports, and that all that is actually involved in the litigation at this time is the liability of the meat companies for the per diem penalties