The PEOPLE of the State of
Colorado, Petitioner,

v.

John R. GOUKER, Respondent.

No. 81SC98.

Supreme Court of Colorado,
En Banc.

May 23, 1983.

As Modified on Denial of Rehearing
June 20, 1983.

J.D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., John Daniel Dailey, Asst. Atty. Gen., Denver, for petitioner.

J. Gregory Walta, State Public Defender, James England, Deputy State Public Defender, Denver, for respondent.

ERICKSON, Chief Justice.

We granted certiorari to review *People v. Gouker,* 628 P.2d 149 (Colo.App.1981). The court of appeals held that the respondent, John R. Gouker, had been illegally detained and questioned and that evidence obtained as the result of an illegal arrest should be suppressed as "fruit of the poisonous tree." *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). We conclude that Gouker was legally arrested pursuant to an outstanding felony arrest warrant and, accordingly, reverse the court of appeals. We remand the case to the court of appeals to address the undecided issues of whether the respondent was denied a fair trial and whether the evidence was sufficient as a matter of law to support the respondent's conviction.

## I.

On September 2, 1977, six-year old Valerie Reedy was awakened by a man knocking on the front door of the Reedy residence and on Valerie's bedroom window. Valerie went to the door and heard the man say: "Let me in. I'm your uncle." Valerie opened the door for the man and accompanied him into the Reedy's foyer. The man again told Valerie that he was her uncle and that "I know your mother is Linda." After a brief conversation, the man grabbed Valerie and carried her out of the house and towards the street. Suddenly, the man dropped or threw Valerie to the ground and struck her at least one time. Valerie then walked back to her home and awakened her parents by knocking on the front door.

Valerie's father called the Westminster, Colorado police department and reported the incident. The police took Valerie to a hospital where she was hospitalized for her injuries. That night, Valerie could provide little information to the police other than the fact that her assailant was a "white male."

Police investigators subsequently learned that a woman named Linda Berry had lived at the same address as the Reedys until she

sold the house and moved late in 1976. Linda Berry's husband, George Berry, was John Gouker's uncle. Gouker had lived with the Berrys for a time in the early 1970's and had visited Linda Berry in late 1976 at the home which was later sold to the Reedys. Linda Berry had three children, one of whom was a girl slightly older than Valerie Reedy.

Consequently, the police focused their attention on John Gouker as a leading suspect in the case. The police learned that Gouker had moved back to the Denver area from California late in the summer of 1977 and was working at a Denver amusement park. The police also learned that Gouker was wanted in California on an outstanding felony warrant and that he was planning to leave Colorado imminently.

The Westminster police contacted Gouker at about 10:00 p.m. on September 3, 1977, at the amusement park where he was working. Gouker, who was a ticket-taker for the roller-coaster ride, was asked to accompany the investigating officers to a park office for questioning. Upon entering the office, Gouker was informed that he was under arrest, advised of his *Miranda* rights, and questioned for approximately forty-five minutes. At that time, he produced a bond receipt and claimed that he had made bond on the California warrant. Gouker also told the police about his activities on the night that Valerie Reedy was assaulted and, after making several inconsistent statements, was formally arrested and charged with kidnapping and assault. Several days later, Valerie Reedy identified Gouker from a photograph taken after the arrest and provided other information about her assailant which was used at trial.

At trial, John Gouker was convicted of second-degree kidnapping, section 18–3–302, C.R.S.1973 (1978 Repl.Vol. 8), and third-degree assault, section 18–3–204, C.R.S.1973 (1978 Repl.Vol. 8), and was sentenced to prison. The court of appeals reversed the convictions and remanded for retrial. The reversal was predicated on the conclusion that the arrest was not supported by probable cause because the police did not have a reasonable belief that Gouker had committed a crime when he was detained and interrogated in the park office. The court also suppressed evidence which was obtained subsequent to the arrest, including a photographic identification and various inculpatory statements, but permitted an in-court identification of the suspect to be admitted on retrial.

## II.

The issue in this case is whether the respondent's arrest was supported by probable cause. The court of appeals held that Gouker was arrested when the police detained him for interrogation in the amusement park office. According to the court, at some point in the encounter, the police overstepped the bounds of an investigatory stop, *Stone v. People,* 174 Colo. 504, 485 P.2d 495 (1971), and improperly arrested Gouker before they had probable cause to do so.

Under normal circumstances, a consensual interview between the police and a suspect or witness is not considered an investigatory stop. As we said in *Stone v. People, supra,* "[t]here is an area of proper police procedure in which an officer having less than probable cause to arrest nevertheless may detain an individual temporarily for certain purposes and not violate the unreasonable search and seizure limitation of the Fourth Amendment." *Id.* at 508, 485 P.2d at 497. *See also Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *People v. Schreyer,* 640 P.2d 1147 (Colo. 1982); *People v. Johnson,* 199 Colo. 68, 605 P.2d 46 (1980). In *People v. Schreyer, supra,* we held that "[a]lthough an investigatory stop itself does not constitute an arrest, whenever detention and questioning by a police officer are more than brief or cursory, there is an arrest which must be supported by probable cause." 640 P.2d at 1150. Here, we need not determine whether the encounter constituted an investigatory stop and, if so, at what point the stop became an arrest. The police had probable cause to arrest Gouker based on the outstanding California felony warrant; there-

fore, no illegal arrest occurred as a result of the detention or interrogation.

■ After the Westminster police focused their investigation on Gouker, his record was checked for background information. The existing California warrant was discovered at that time. We have held that an outstanding arrest warrant from another jurisdiction may "provide the probable cause needed to make an arrest." *People v. Coto,* 199 Colo. 508, 510, 611 P.2d 969, 970 (1980) (Florida warrant provided probable cause to arrest).[1] Other jurisdictions have also held that an outstanding arrest warrant establishes sufficient probable cause to justify a warrantless arrest. *See, e.g., United States v. McDonald,* 606 F.2d 552 (5th Cir.1979); *United States v. Palmer,* 536 F.2d 1278 (9th Cir.1976); *State v. Everett,* 110 Ariz. 429, 520 P.2d 301 (1974); *Childress v. United States,* 381 A.2d 614 (D.C.App. 1977); *Carter v. State,* 18 Md.App. 150, 305 A.2d 856 (1973). Mere existence of an outstanding arrest warrant does not conclusively establish probable cause, however. The United States Supreme Court held in *Whitely v. Warden,* 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971), that an arrest warrant must be supported by probable cause or the arrest will be illegal. Thus, *Whitely* precludes the police from establishing probable cause to arrest by the expedient of obtaining an arrest warrant which may be used by arresting officers who are unaware that the warrant is not supported by probable cause. *See also Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61

L.Ed.2d 433 (1979) (arrest pursuant to a facially valid arrest warrant legal; arrestee free to challenge the validity of underlying warrant). *Michigan v. Doran,* 439 U.S. 282, 99 S.Ct. 530, 58 L.Ed.2d 521 (1978) (in extradition proceedings, rendering state may rely on probable cause determination of demanding state).

■ The police are entitled to make an arrest based on an outstanding felony arrest warrant. Adequate protection is provided to arrested persons by allowing a post-arrest determination of the validity of the warrant. *Whitely v. Warden, supra.* We therefore hold that the existence of an outstanding warrant provides a prima facie showing of probable cause, although the person arrested may challenge the validity of the arrest warrant at a post-arrest probable cause hearing.[2] *See Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975).

### III.

The respondent argues that the outstanding felony arrest warrant did not provide probable cause in this case because the officer chose to arrest on the local charges instead. There is some testimony in the record which indicates that the arresting officer may not have based his arrest of the respondent on the California warrant without more information. The findings of the trial court establish, however, that the outstanding felony warrant was partially a

---

1. The police have also been given statutory authority to arrest pursuant to an outstanding warrant. Section 16–19–115, C.R.S.1973 (1978 Repl.Vol. 8), provides:

   "The arrest of a person may be lawfully made also by any peace officer or a private person without a warrant upon reasonable information that the accused stands charged in the courts of a state with a crime punishable by death or imprisonment for a term exceeding one year. When so arrested the accused must be taken before a judge with all practicable speed, and complaint must be made against him under oath setting forth the ground for arrest as in section 16–19–114; and thereafter his answer shall be heard as if he had been arrested on a warrant."

Evidence obtained from Gouker incident to the lawful arrest based on the felony warrant provided probable cause for the detention and charges on kidnapping and assault.

2. We note that a California arrest warrant will not be issued unless a magistrate determines that probable cause to arrest exists. *See* Cal. Penal Code § 813 (West 1978). Our decision here is consistent with the approach taken in extradition cases which rely on probable cause determinations from other jurisdictions. *See Michigan v. Doran, supra; Dietz v. Leach,* 199 Colo. 293, 607 P.2d 993 (1980); *Keefer v. Leach,* 198 Colo. 101, 597 P.2d 203 (1979).

basis for the officer's warrantless arrest.[3]

■■■ The respondent, in essence, is arguing that a subjective analysis of the arresting officer's motives for making an arrest should be used in cases where multiple crimes are being investigated. Instead of determining whether the state had in its possession sufficient evidence to establish probable cause for a warrantless arrest, *Colo. Const.* article II, section 7, the respondent would have us delve into the arresting officer's subjective reasons for making an arrest decision. For example, an officer may believe he has probable cause to make an arrest for two separate crimes. The officer subsequently decides to make an arrest on one charge, but not the other. Later, a court might determine that probable cause to arrest for one charge was lacking, although probable cause to arrest for the other charge, in fact, existed. Under respondent's theory, the suspect's initial arrest would be illegal even though objective information sufficient to establish probable cause to arrest the suspect existed. Contrary to the respondent's contentions, courts have uniformly required an objective standard for determining probable cause and we see no reason to depart from that standard now. *See, e.g., Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979) (Stevens, J., concurring); *Brown v. Texas,* 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979); *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *People v. Rueda,* 649 P.2d 1106 (Colo.1982). *See generally* 1 W. LaFave, *Search & Seizure* § 3.2(b). The officer's subjective intent is not critical in making the probable cause determination. *Florida v. Royer,* —— U.S. ——, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *United States v. Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); *People v. Mathis,* 189 Colo. 534, 542 P.2d 1296 (1975). *See also People v. Tate,* 657 P.2d 955 (Colo.1983). The fact that the arresting officer in this case may have erroneously believed that he had probable cause to arrest on kidnapping charges does not preclude an arrest based on the outstanding felony warrant. Under an objective standard, the officer had probable cause to arrest based on the California warrant when he first approached Gouker. Therefore, the detention and interrogation were not unlawful.

■■■ The respondent also argues that the detention was improper because he produced a bond receipt indicating that he had made bail. The validity of the bond receipt was not checked at the time of the arrest because of the late hour of the interview and because the arrest occurred on a holiday evening. The police also believed that Gouker was planning to leave Denver after the holiday weekend. There is no evidence in the record which confirms either the validity or the illegitimacy of the receipt. Police officers are not required to establish conclusively the legitimacy of an outstanding felony arrest warrant at the time of the arrest. A bond receipt normally indicates nothing more than the fact that bail has been made. The suspect may still be in violation of the terms of bail or wanted on other charges. The officer in the field is entitled to arrest a suspect on the basis of an outstanding warrant, despite the suspect's protestations as to the warrant's invalidity.

IV.

■■■ An arrest pursuant to a facially valid warrant satisfies the prosecution's burden of proving that probable cause to arrest exists. *People v. Coto, supra.* The prosecution is entitled to presume that a foreign warrant was issued after an independent determination of probable cause by a neutral magistrate, although the defense is free to challenge the warrant as invalid. *See generally* 3 W. LaFave, *Search & Seizure* § 11.2 (1978). The respondent failed

**3.** The trial court heard testimony at the suppression hearing indicating that Gouker was about to leave the state. The court also found that the officer had no opportunity to verify the respondent's bond receipt because of the late hour and the holiday weekend. Based on these factors, the court concluded that exigent circumstances existed supporting a warrantless arrest.

to contest the validity of the warrant at the suppression hearing, even though the arresting officer testified that he relied in part on the warrant in questioning Gouker. Gouker did not contest the validity of the arrest warrant at the suppression hearing or trial and cannot now raise the issue on appeal after other defense theories have proven unsuccessful.

Other information which became available after Gouker's arrest supports charges of kidnapping and assault in the Valerie Reedy case. That evidence is not "fruit of the poisonous" tree, but lawful evidence resulting from a custodial interrogation conducted pursuant to a valid arrest. The record discloses that Gouker was given his *Miranda* warnings and there is no evidence supporting a finding of unlawful coercion.

We therefore conclude that the arrest and charges brought in the Reedy case were supported by probable cause and were not illegal. Accordingly, the judgment of the court of appeals is reversed and the case is remanded to the court of appeals to address the undecided issues of whether the respondent was denied a fair trial and whether the evidence was sufficient as a matter of law to support the conviction.

KIRSHBAUM, J., does not participate.