**The PEOPLE of the State of Colorado Plaintiff-Appellant,**

**v.**

**Robert D. MITCHELL Defendant-Appellee.**

**No. 83SA224.**

Supreme Court of Colorado, En Banc.

March 5, 1984.

Robert R. Gallagher, Jr., Dist. Atty., Catherine DiSante, Deputy Dist. Atty., Littleton, for plaintiff-appellant.

Steven Taffet, Denver, for defendant-appellee.

QUINN, Justice.

The People in this interlocutory appeal challenge a ruling of the district court suppressing a vial of cocaine seized from the defendant, Robert D. Mitchell, in the course of a search incident to an arrest based on an erroneously issued arrest warrant for an unpaid traffic fine. The district court held that the arrest warrant was void from the time of its issuance, thereby rendering the arrest and search illegal and requiring the suppression of the evidence seized incident to the arrest. We affirm the suppression ruling.

I.

The pertinent facts are not in dispute. On December 18, 1982, Officer Mark Sigler of the Greenwood Village Police Department stopped the defendant for driving seventy-five miles per hour in a fifty-five mile zone. The officer took the defendant's driver's license and, in keeping with routine procedure, went back to his police vehicle in order to inquire of the police dispatcher whether there were any outstanding warrants for the defendant. The dispatcher scanned a computer screen and informed Officer Sigler that there was an outstanding Greenwood Village arrest warrant for the defendant's failure to pay a previous traffic fine. The dispatcher then manually examined the warrant file at the police station and confirmed the outstanding arrest warrant for the defendant.

Officer Sigler arrested the defendant on the outstanding warrant and took him to the Greenwood Village police station where he was searched. A small cylindrical vial

containing cocaine was seized from one of the defendant's pockets, and the defendant was charged with possession of a controlled substance.[1] It was later determined that the Greenwood Village warrant had been issued in error, since the defendant had actually paid the traffic fine prior to the issuance of the warrant.

The defendant filed a motion to suppress. Conceding that the initial stop for speeding was valid, the defendant asserted that the seizure of the cocaine was the product of an unconstitutional arrest based on an invalid arrest warrant. The People acknowledged at the suppression hearing that the defendant had timely paid the traffic fine and that the Greenwood Village warrant had been issued in error. The district court ruled that the defendant's arrest was based on a warrant that was void from its issuance and accordingly suppressed any evidence seized from the defendant at the station house as the product of an unconstitutional arrest.[2]

The People challenge the suppression ruling on the basis of section 16-3-308, C.R.S.1973 (1983 Supp.), which provides that evidence otherwise admissible in a criminal proceeding shall not be suppressed when seized by a peace officer as a result of a "good faith mistake" or "technical violation." The defendant, in contrast, contends that an arrest based upon an invalid warrant does not qualify as a "good faith mistake" or "technical violation" within the meaning of section 16-3-308. We conclude that section 16-3-308 does not apply to an arrest based on a warrant void from its inception due to the absence of any cause whatever for its issuance.

II.

The constitutional proscription against an unlawful seizure of the person serves as the starting point of our analysis. Both the United States and Colorado Constitutions require that an arrest warrant be founded on probable cause, supported by oath or affirmation, particularly describing the person to be seized. *U.S. Const.* Amend. IV; *Colo. Const.* Art. II, Sec. 7.

In *Whiteley v. Warden,* 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971), the United States Supreme Court addressed this constitutional requirement of probable cause under circumstances somewhat similar to those present here. In *Whiteley,* the sheriff of Carbon County, Wyoming, acting on a tip, signed a conclusory complaint reciting nothing more than that Harold Whiteley and Jack Daley unlawfully broke into and entered a building identified as the Rustic Bar in Saratoga, Wyoming, on November 23, 1964. A justice of the peace issued an arrest warrant based on the complaint, and the sheriff then issued a police radio bulletin describing the two men, the type of car they were driving, and the amount and type of money taken in the crime. A police officer in another county, relying on the bulletin, made a warrantless arrest of Whiteley and Daley when he saw them in the described vehicle. The officer searched the vehicle and seized various incriminating items, including some coins taken in the crime. The Supreme Court held that the arrest and the seizure of

1. Sections 12-22-310(1)(a)(V), C.R.S. 1973 (1983 Supp.), and 18-18-105(1)(a), C.R.S. 1973 (1983 Supp.).

2. The district court ruled, in pertinent part, as follows:

"The information received by Officer Sigler through the computer was erroneous material, and [had] the correct information be[en] supplied to Officer Sigler, the normal course of events would have been that he would have issued a traffic summons to Mr. Mitchell to appear in court for violating the speeding law, and Mr. Mitchell would [have] been on his way.

"However, the information received by Officer Sigler was incorrect, although the officer was perfectly within his rights to act on the incorrect information.... The warrant that caused Mr. Mitchell's arrest should never have been issued, and therefore was void ... *ab initio.*

"In view of the fact that the arrest warrant was void ... *ab initio,* the taking of Mr. Mitchell into custody was improper. The search at police headquarters was improper, and any information or substances obtained from that search are the results of an improper arrest and are hereby suppressed."

evidence incident thereto violated the Fourth Amendment because, first, the complaint was factually insufficient to support an independent judgment that probable cause existed for the warrant, and, second, the arresting officer had no information to corroborate the report that the suspect had committed the crime. The Court then addressed the state's contention that the police bulletin itself was sufficient to validate the arrest:

> "We do not, of course, question that the Laramie police were entitled to act on the strength of the radio bulletin. Certainly police officers called upon to aid other officers in executing arrest warrants are entitled to assume that the officers requesting aid offered the magistrate the information requisite to support an independent judicial assessment of probable cause. Where, however, the contrary turns out to be true, an otherwise illegal arrest cannot be insulated from challenge by the decision of the instigating officer to rely on fellow officers to make the arrest." 401 U.S. at 568, 91 S.Ct. at 1037, 28 L.Ed.2d at 313.

While this language may suggest that an arresting officer acting on a police bulletin "should not be held personally responsible in a civil action or disciplinary proceedings if it turns out that there was no probable cause at the source," there can be no doubt that *Whiteley* requires the suppression of evidence seized by the arresting officer "if facts adding up to probable cause were not in the hands of the officer or agency which gave the order or made the request." 1 W. LaFave, *Search and Seizure* § 3.5 at 623–24 (1978); *see People v. Gouker,* 665 P.2d 113 (Colo.1983) (existence of an outstanding arrest warrant provides a prima facie showing of probable cause, but person arrested may challenge warrant's validity at suppression hearing). *Whiteley* applies with even stronger force to evidence seized as the result of an arrest based solely upon a warrant that is totally lacking in *any* factual support for its issuance. *See People v. Decuir,* 84 Ill.App.3d 531, 39 Ill.Dec. 912, 405 N.E.2d 891 (1980) (*Whiteley* requires suppression of evidence seized in arrest resulting from mistaken dispatch that arrest warrant still outstanding, when in fact warrant had been quashed long before arrest); *People v. Jennings,* 54 N.Y.2d 518, 522, 430 N.E.2d 1282, 1285, 446 N.Y.S.2d 229, 231–32 (1981) ("in making an arrest a police officer may rely upon information communicated to him by another police officer ... that an individual is the subject named in a warrant and should be taken into custody [, but] if ... the warrant turns out to be invalid, any evidence seized as a result of the arrest will be suppressed notwithstanding the reasonableness of the arresting officer's reliance upon the communication").

In arguing that the defendant's arrest was constitutionally valid, the People rely primarily on *Hill v. California,* 401 U.S. 797, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971). We find this reliance misplaced. In *Hill,* police officers, having probable cause to arrest Hill for robbery, went to his apartment where they were met by a man who matched Hill's description but who identified himself as Miller and told the officers that he was waiting for Hill's return. The officers believed Miller was in fact Hill, arrested him, searched the apartment, and seized guns, stolen property, and other evidentiary items. Hill was ultimately charged and convicted of robbery. The Supreme Court upheld the search of Hill's apartment as incident to a valid arrest because the officers reasonably believed Miller to be Hill and probable cause existed for Hill's arrest:

> "[T]he officers in good faith believed Miller was Hill and arrested him. They were quite wrong as it turned out, and subjective good-faith belief could not in itself justify either the arrest or the subsequent search. But sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment and on the record before us the officers' mistake was understandable and the arrest a reasonable response to the situation facing them at the time." 401 U.S. at 803–04, 91 S.Ct. at 1110–11, 28 L.Ed.2d at 490.

The decision in *Hill,* which obviously turned on the existence of probable cause to make an arrest in the first instance, did not address the issue of the validity of an arrest pursuant to a warrant unsupported by probable cause, whereas *Whiteley* expressly resolved that precise issue. Since the issue raised on this appeal also involves the validity of an arrest based on a warrant erroneously issued and unsupported by probable cause, *Whiteley* is the controlling precedent. *See Sanders v. United States,* 339 A.2d 373, 379 (D.C.Ct.App.1975) (*Whiteley* applies where "there is an infirmity inherent in the foundation of the warrant," such as an insufficient affidavit; *Hill,* in contrast, applies where the arrest warrant is constitutionally valid and the police, acting "in good faith" and with "reasonable, articulable grounds to believe that the suspect is the intended arrestee," arrest an individual "other than the one against whom the warrant is outstanding").[3]

The People in this case concede that the defendant's arrest was based solely on Officer Sigler's reliance upon the dispatcher's message that there was an outstanding warrant for the defendant. Because Officer Sigler had no other information before him that might otherwise support the arrest, we are left with the question whether section 16–3–308, which creates the "good faith mistake" and "technical violation" exceptions to the exclusionary rule, is applicable to the factual circumstances disclosed by the record before us. It is to this question that we now turn.

III.

Section 16–3–308, C.R.S.1973 (1983 Supp.), states, in pertinent part, as follows:

"(1) Evidence which is otherwise admissible in a criminal proceeding shall not be suppressed by the trial court if the court determines that the evidence was seized by a peace officer, as defined in section 18–1–901(3)(*l*), C.R.S., as a result of a good faith mistake or of a technical violation.

"(2) As used in subsection (1) of this section:

(a) 'Good faith mistake' means a reasonable judgmental error concerning the existence of facts which if true would be sufficient to constitute probable cause.

(b) 'Technical violation' means a reasonable good faith reliance upon a statute which is later ruled unconstitutional, a warrant which is later invalidated due to a good faith mistake, or a court precedent which is later overruled."

■ In this case we are not dealing with the issue of whether section 16–3–308 is reconcilable with federal and state constitutional guarantees against unreasonable searches and seizures. *U.S. Const.* Amend. IV; *Colo. Const.* Art. II, Sec. 7. To date, the United States Supreme Court has declined to sanction police intrusions that are otherwise constitutionally deficient solely because a police officer reasonably and in good faith believed his conduct comported with probable cause. *Taylor v. Alabama,* 457 U.S. 687, 102 S.Ct. 2664, 73 L.Ed.2d 314 (1982); *see People v. Quintero,* 657 P.2d 948 (Colo.1983), *cert. granted sub nom. Colorado v. Quintero,* — U.S. —, 103 S.Ct. 3535, 77 L.Ed.2d 1386, *cert. dismissed,* — U.S. —, 104 S.Ct. 543, 78 L.Ed.2d 719 (1983).[4] The only issue raised

3. Contrary to the People's argument, we also find *Michigan v. DeFillippo,* 443 U.S. 31, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979), inapplicable to the circumstances of this case. *DeFillippo* involved the seizure of illegal drugs incident to an arrest under a Detroit ordinance requiring a person lawfully stopped by a police officer to identify himself. Although the ordinance was subsequently found to be unconstitutionally vague, the Supreme Court upheld the seizure of the illegal drugs because the officer had probable cause to arrest DeFillippo for violation of the ordinance and its subsequent invalidation did not affect the legality of that arrest.

4. Currently, the United States Supreme Court has before it on certiorari two cases raising issues concerning the adoption of a good faith exception to the exclusionary rule. *United States v. Leon,* 701 F.2d 187 (9th Cir.1983), *cert. granted,* — U.S. —, 103 S.Ct. 3535, 77 L.Ed.2d 1386 (1983); *Commonwealth v. Sheppard,* 387 Mass. 488, 441 N.E.2d 725 (1982), *cert. granted sub nom. Massachusetts v. Sheppard,* — U.S. —, 103 S.Ct. 3534, 77 L.Ed.2d 1386 (1983).

on this appeal is whether, constitutional issues aside, the evidence at the suppression hearing established that Officer Sigler's arrest of the defendant and his subsequent seizure of cocaine from the defendant's person resulted from a "good faith mistake" or a "technical violation" as these terms are defined in section 16-3-308(2). We conclude that the record before us is insufficient to satisfy either of these statutory exceptions to the exclusionary rule.

A.

Section 16-3-308(2)(a) defines a "good faith mistake" as "a reasonable judgmental error concerning the existence of facts which if true would be sufficient to constitute probable cause." This statutory definition restricts "good faith mistake" to mistakes based on reasonable judgmental errors of *fact* rather than mistakes of *law.* Indeed, it has been observed that it would be extremely difficult to determine what constitutes a reasonable mistake of law, requiring as it would an inquiry into "objective extrapolations of existing law" and "inferences from existing law" that an officer should have drawn. 1 W. LaFave, *supra* at § 1.2 at 15 (Supp.1984). In the case of an arrest warrant, the statutory definition of "good faith mistake" is apparently intended to include reasonable judgmental errors of fact made by an officer in applying for or in executing a warrant, *see People v. Quintero, supra,* or similar factual errors made by a court in issuing a warrant. Viewed in this light, the statutory definition of "good faith mistake" serves to make explicit what is already implicit in federal exclusionary rule doctrine. *See Hill v. California, supra* (arrest and ensuing search upheld when police had probable cause to arrest Hill but arrested Miller instead, due to reasonable mistake as to identity of person arrested).[5]

In this case there is no evidence of any "good faith mistake" on the part of Officer Sigler in arresting the defendant. The officer had been informed by the police dispatcher that there was an outstanding warrant for the defendant, and this information was true. Unknown to the officer, however, the warrant had been improperly issued as a result of some mistake on the part of the Greenwood Village Municipal Court. Because no evidence was presented at the suppression hearing with respect to the factual circumstances underlying the issuance of the warrant, the record obviously is silent on the particular source or character of this mistake. Without such a factual predicate there is no basis to conclude that the warrant was issued as the result of some reasonable judgmental error concerning the existence of facts which if true would have constituted probable cause to arrest the defendant. Simply stated, the statutory definition of "good faith mis-

5. With respect to section 16-3-308(2)(b), which includes within the definition of "technical violation" a good faith reliance on a statute later ruled unconstitutional and a good faith reliance on a court precedent later overturned, the United States Supreme Court has already accommodated the former situation (an arrest and incidental seizure of evidence stemming from a statute later declared unconstitutional) to exclusionary rule doctrine by upholding such action as long as the arrest was based on probable cause. *Michigan v. DeFillippo, supra* note 3. The latter situation (intrusions resulting from reliance upon a court precedent later overruled) was also incorporated into exclusionary rule doctrine in *United States v. Peltier,* 422 U.S. 531, 95 S.Ct. 2313, 45 L.Ed.2d 374 (1975). *Peltier* involved the stop and search of the defendant by a roving border patrol under circumstances which, as later determined in *Almeida-Sanchez v. United States,* 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973), violated the Fourth Amendment. Because the roving border patrol search had been supported by longstanding administrative regulations and continuous judicial approval, the Court's decision in *Almeida-Sanchez* invalidating the practice in question was a clear break with the past and under these circumstances was not given retroactive effect. While Fourth Amendment decisions are generally applied retroactively to convictions that are not yet final at the time the decision was rendered, this principle does not apply to a decision that represents "a clear break with the past" by overruling a past precedent, disapproving a practice sanctioned in prior cases, or overturning a longstanding practice which had received near unanimous approval by lower courts. *United States v. Johnson,* 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982). *See also* 3 W. LaFave, *supra* at § 11.5 at 273-74 (Supp.1984).

take" in section 16–3–308(2)(a) has no application to the facts of this case.

B.

A "technical violation," as defined in section 16–3–308(2)(b), means "a reasonable good faith reliance upon ... a warrant which is later invalidated due to a good faith mistake ...." This statutory definition expressly incorporates the definition of "good faith mistake" in subsection 16–3–308(2)(a)—that is, "a reasonable judgmental error concerning the existence of facts which if true would be sufficient to constitute probable cause." Here again, there is nothing in the record even suggesting that the cause of the warrant's invalidation was due to some "good faith mistake" on the part of the issuing court.

On the contrary, the warrant was void not because the facts supporting it fell somewhat below the constitutional threshold of probable cause, but, so far as the record shows, because there were no facts at all to support its issuance. Whatever the outer limit of the "technical violation" exception might be, we are satisfied that it was not intended to encompass an arrest warrant that is totally devoid of any factual support and comes into being only as the result of some unexplained mistake on the part of the issuing court. The defect in such a warrant is a fundamental one, far beyond the purview of a "technical violation."

IV.

The arrest of the defendant on the basis of an erroneously issued arrest warrant violated the Fourth Amendment to the United States Constitution and Article II, Section 7 of the Colorado Constitution. As defined in section 16–3–308, neither the "good faith mistake" nor "technical violation" exceptions to the exclusionary rule are applicable to the facts of this case. The district court, therefore, properly suppressed the evidence seized from the defendant as the product of an unconstitutional arrest.

The suppression ruling is accordingly affirmed.

ROVIRA, J., dissents.

ROVIRA, Justice, dissenting:

I dissent. The issue to be resolved in this case is whether the police officer, acting on the information that there was an outstanding arrest warrant for Mitchell, had probable cause to arrest him on December 18, 1982. The validity of the search incident to Mitchell's arrest, which uncovered the vial of cocaine, depends upon how we choose to resolve the issue of probable cause. The People argue that even though the warrant proved to be invalid, that fact does not mandate the suppression of the evidence obtained as a result of Mitchell's arrest. They claim that the arresting officer, upon learning of the outstanding warrant, was under a duty to effect Mitchell's arrest, *see* section 13–10–111(2), C.R.S.1973,[1] and that his actions were in complete accord with what the law would have allowed, had the warrant been correct. Mitchell argues, on the other hand, that absent a valid warrant, there was no probable cause for the officer to arrest him. The district court agreed with Mitchell and ordered the suppression of the cocaine. The majority now upholds the suppression, citing *Whiteley v. Warden,* 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971), as the controlling precedent. Under the circumstances, however, a different result is warranted. In my opinion, the police officer had probable cause to arrest Mitchell, and, as a result, the search was valid.

I.

Probable cause to arrest exists when the facts and circumstances known to the arresting officer are sufficient to warrant the belief by a reasonable and prudent person, in light of that person's training and expe-

1. This statute provides in part: "Processes from any municipal court shall be executed by any authorized law enforcement officer from the municipality in which the court is located."

rience, that an offense has been committed and the defendant committed it. *People v. Roybal,* 655 P.2d 410 (Colo.1982); *People v. Vigil,* 198 Colo. 185, 597 P.2d 567 (1979); *People v. Gonzales,* 186 Colo. 48, 525 P.2d 1139 (1974); section 16–3–102, C.R.S.1973 (1978 Repl.Vol. 8). Probable cause may be based on the personal observations of the arresting officer, on facts provided to him by fellow officers or others, or on a combination of these categories of information. *People v. Chavez,* 632 P.2d 574 (Colo.1981); *People v. Saars,* 196 Colo. 294, 584 P.2d 622 (1978). In evaluating probable cause, we have often stated that probability, not certainty, is the touchstone of reasonableness under the fourth amendment and that probable cause involves probabilities similar to the factual and practical questions of everyday life upon which reasonable and prudent persons act. *Roybal,* 655 P.2d 410 (Colo.1982); *People v. Baird,* 172 Colo. 112, 470 P.2d 20 (1970). *See Hill v. California,* 401 U.S. 797, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971).

In this case, the existence of an outstanding arrest warrant provided a *prima facie* showing of probable cause, and the police officer was entitled to rely on such a warrant in making the arrest. In *People v. Gouker,* 665 P.2d 113 (Colo.1983), the defendant was arrested on the basis of an outstanding California arrest warrant. He produced a bond receipt and argued that his arrest was not based on probable cause and was improper. We held that police officers are not required to establish conclusively the legitimacy of an outstanding arrest warrant at the time of the arrest. Even if the defendant decides to protest the validity of the warrant, the officer in the field is entitled to make the arrest, since "[a]n arrest pursuant to a facially valid warrant satisfies the prosecution's burden of proving that probable cause to arrest exists." *Id.* at 117. *See People v. Coto,* 199 Colo. 508, 611 P.2d 969 (1980).

The majority relies on *Whiteley v. Warden,* 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971), to support its position that the police lacked probable cause to arrest Mitchell. In *Whiteley,* the defendant was arrested by an officer who relied on a police radio bulletin which stated that a warrant existed for the defendant's arrest. After finding that the warrant was deficient because it was not supported by a proper affidavit, the Supreme Court rejected the state's argument that the arresting officer's reliance on the bulletin furnished probable cause and thus legalized the arrest:

> "We do not, of course, question that the ... police were entitled to act on the strength of the radio bulletin. Certainly police officers called upon to aid other officers in executing arrest warrants are entitled to assume that the officers requesting aid offered the magistrate the information requisite to support an independent judicial assessment of probable cause. Where, however, the contrary turns out to be true, an otherwise illegal arrest cannot be insulated from challenge by the decision of the instigating officer to rely on fellow officers to make the arrest."

*Id.* at 568, 91 S.Ct. at 1037.

A week after the Supreme Court decided *Whiteley,* it also decided *Hill v. California,* 401 U.S. 797, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971). The People rely on *Hill* to support their argument that the presumably valid warrant provided probable cause to arrest Mitchell. In *Hill,* the police concluded that they had probable cause to arrest Hill for robbery. They went to his apartment and were met by a man named Miller who looked like Hill. They arrested Miller, thinking he was Hill, and searched the apartment. Weapons and proceeds of the robbery were found. Hill claimed that the search was based on the invalid arrest of Miller and that the evidence should be inadmissible. The Supreme Court disagreed, noting that "[t]he police unquestionably had probable cause to arrest Hill." It continued:

> "[W]e find no reason to disturb ... the conclusion that '[w]hen the police have probable cause to arrest one party, and when they reasonably mistake a second party for the first party, then the arrest

of the second party is a valid arrest.... [Here,] the officers in good faith believed Miller was Hill and arrested him. They were quite wrong as it turned out, and subjective good-faith belief would not in itself justify either the arrest or the subsequent search. But sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment and on the record before us the officers' mistake was understandable and the arrest a reasonable response to the situation facing them at the time.

"Nor can we agree ... that however valid the arrest of Miller, the subsequent search violated the Fourth Amendment.... [Under the] circumstances the police were entitled to do what the law would have allowed them to do if Miller had in fact been Hill, that is, to search incident to arrest and to seize evidence of the crime the police had probable cause to believe Hill had committed. When judged in accordance with 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act,' ... the arrest and subsequent search were reasonable and valid under the Fourth Amendment."

*Id.* at 802–05, 91 S.Ct. at 1110–11.

After analyzing the conduct of the police officer in this case, I would apply the *Hill* rationale and uphold the arrest of December 18, 1982. The officer's reliance on the information given to him by the dispatcher provided probable cause to arrest Mitchell. Even though the arrest was based on incorrect information, the officer did not know, and could not reasonably be expected to know, that a mistake had been made and that the outstanding warrant should have been removed from the files. This error of omission and the officer's reasonable reliance on the warrant present a combination of circumstances which does not justify strict application of the exclusionary rule. The rule is intended primarily to deter unlawful or improper police conduct. As the Supreme Court explained in *United States v. Calandra,* 414 U.S. 338, 347–48, 94 S.Ct. 613, 619–20, 38 L.Ed.2d 561 (1974):

"The purpose of the exclusionary rule is not to redress the injury to the privacy of the search victim .... Instead, the rule's prime purpose is to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures: 'The rule is calculated to prevent, not to repair. Its purpose is to deter—to compel respect for the constitutional guaranty in the only effectively available way—by removing the incentive to disregard it.' *Elkins v. United States,* 364 U.S. 206, 217 (1960) .... In sum, *the rule is a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved.*" (emphasis added).

Application of the exclusionary rule in this case serves little purpose, given the announced justification for the rule, since the police officer who arrested Mitchell did nothing unlawful or improper. He made a valid stop, followed standard police procedure, and carried out the mandate in section 13–10–111(2) by executing an outstanding arrest warrant. His actions in no way resemble the type of blatant misconduct which prompted adoption of the rule in the first place. I am satisfied that the cost of applying the rule in a case such as this would outweigh any deterrent effect it might achieve. *See United States v. Havens,* 446 U.S. 620, 100 S.Ct. 1912, 64 L.Ed.2d 559 (1980); *United States v. Ceccolini,* 435 U.S. 268, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1978). In the future, the majority opinion will only serve "to deter [police officers] from acting at all." *United States v. Williams,* 622 F.2d 830, 842 (5th Cir.1980), *cert. denied,* 449 U.S. 1127, 101 S.Ct. 946, 67 L.Ed.2d 114 (1981).

## II.

Courts in other jurisdictions have faced similar fact patterns and, despite *Whiteley,* have decided that the police had probable cause to arrest the defendant. In most

instances, the "mistake" in question has been a failure to remove an outstanding warrant or police report from police records, but the same analysis has been applied to mistakes occurring before a warrant or report has been issued.[2] In *Oregon v. Somfleth,* 8 Or.App. 171, 492 P.2d 808 (1972), police officers approached an automobile and asked the defendant for identification. They then radioed the dispatcher and requested a records check. The dispatcher informed them that the defendant was wanted under the Armed Forces Act for being absent without leave from the United States Marine Corps. At the officers' request, the dispatcher verified this information with the Federal Bureau of Investigation and with military authorities. Despite protestations by the defendant that he was properly on leave, he was arrested and searched. The officers discovered capsules containing a controlled substance in the defendant's pockets. Later, at the police station, "it was confirmed that, contrary to the information received earlier, defendant was not absent without leave." *Id.* at 175, 492 P.2d at 810.

The issue before the Oregon Court of Appeals was whether the police had probable cause to arrest and search the defendant. The court concluded that they did:

> "The reliance placed by [the] officers upon the confirmed reports from police headquarters was proper for they could not reasonably be expected to disregard the officially verified information.... That subsequent information showed defendant not to have been AWOL or a deserter does not detract from the lawfulness of the initial arrest and search and seizure pursuant thereto. Under the circumstances of this case, the police were entitled to do what the law authorized them to do if defendant had, in fact, been a deserter; that is, to make a reasonable search incident to a lawful arrest. *See Hill v. California,* 401 U.S. 797, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971)."

*Id.* at 177, 492 P.2d at 811.

Similarly, in *New Jersey v. Cross,* 164 N.J.Super. 368, 396 A.2d 604 (1978), a police officer stopped the defendants' automobile for speeding. He radioed for an investigative check on the vehicle's registration and learned that the automobile was listed as stolen by the local police department. A second radio message informed him that the local police department had confirmed his initial inquiry. Despite protestations that the automobile was not stolen, the defendants were arrested. A search for further identification led to the discovery of capsules containing a controlled substance in the glove compartment. Later, at the police station, the officer learned that the automobile, which had been stolen, had also been recovered and returned to one of the defendants. The local police had simply "forgot[ten] to cancel their teletype in the N.C.I.C. computer." *Id.* at 371, 396 A.2d at 605.

The issue before the New Jersey Superior Court was identical to that facing the Oregon court in *Somfleth.* The response was also the same. The court explained:

> "Probable cause and the reasonableness of the search must be tested by the nature of the information available to the officers at the time; and certainly there was sufficient reliable information, and not mere suspicion at that time, that the car was stolen. We are of the view that the fact that it was later proved to be false information because of administrative errors of others cannot affect the validity of the officers' actions at the crucial time involved.... Just as a search can not be validated by subsequently acquired information, conversely, it can not be invalidated by such subsequent events."

2. The record in this case is not precise as to when the outstanding arrest warrant was issued. The majority assumes that Mitchell "actually paid the traffic fine prior to the issuance of the warrant," but the record does not disclose the date the fine was paid or the date the warrant was issued. In any event, I conclude that the analysis in this section is applicable regardless of when the warrant was issued.

*Id.* at 374, 396 A.2d at 606–07. *See also Childress v. United States,* 381 A.2d 614 (D.C.1977) (police officers' reliance on radio report and resultant reasonable belief that valid traffic warrants were outstanding provided probable cause to arrest the defendant); *Patterson v. United States,* 301 A.2d 67 (D.C.1973) (room must be allowed for some mistakes by police officers, so long as the mistakes are of reasonable persons, acting on facts leading sensibly to their conclusions of probability); *People v. Lent,* 105 Misc.2d 831, 433 N.Y.S.2d 538 (1980) (police had probable cause to arrest and search the defendant; mere fact that unknown to them the warrant had been vacated does not alter both a right and duty to arrest the defendant); *Commonwealth v. Riley,* 284 Pa.Super. 280, 425 A.2d 813 (1981) (court in hindsight will not invalidate an arrest and search when the arresting officer reasonably relied upon information which he had no reason to believe was incorrect).

Either explicitly or implicitly, these cases adopt the *Hill,* rather than the *Whiteley,* rationale. They also reflect a different attitude about the exclusionary rule than that evidenced by the majority opinion. Instead of applying the rule in a *per se* fashion, these cases focus on the type of mistake and on the deterrent value of applying the rule in individual situations. Using this approach, I am satisfied that the police officer in this case had probable cause to arrest the defendant and that the search incident to that arrest was also valid.[3] Accordingly, I would reverse the order of the district court.

3. Because this conclusion is, in my opinion, correct, I choose not to address the issue discussed by the majority in section III of its opinion, namely, the application of section 16–3–308, C.R.S. 1973 (1983 Supp.), to the facts of this case.