Argued October 27, 1971, reversed and remanded January 14,
petition for rehearing denied February 8, petition for
review denied March 31, 1972

## STATE OF OREGON, *Appellant, v.*
## THOMAS LYLE SOMFLETH, *Respondent.*
### 492 P2d 808

*Thomas H. Denney,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

*John A. Pickard,* Portland, argued the cause for respondent. With him on the brief were Dardano, Mowry & Hanson, Portland.

Before SCHWAB, Chief Judge, and LANGTRY and FORT, Judges.

FORT, J.

Defendant was indicted for unlawful possession of the dangerous drug secobarbital. ORS 475.100. He moved to suppress as evidence eight capsules of secobarbital found on his person at the time of his arrest on the ground that they had been illegally seized. After a hearing, the trial court granted defendant's motion. The state appeals, pursuant to ORS 138.060(4).

The relevant facts are undisputed and are as follows. On the morning of August 17, 1970, a pharmacy in Forest Grove, Oregon, was broken into, and varieties of dexedrine and secobarbital were taken. On the evening of the same day, Officer Miller of the Forest Grove police department was contacted by an informant, whom the trial court properly found to be reliable. From his conversation with the informant, Officer Miller concluded that the defendant "had some information as to the state of [the] break-in." Officer Miller also knew that the defendant had been convicted of a drug law violation in California.

Shortly after 1:00 a.m. on August 18, 1970, Officers Miller and Ely came upon an automobile stopped in the middle of a street in Forest Grove. Defendant was the only passenger in the vehicle and one Donald Dedrickson was the driver. As the officers drove up behind the automobile, Officer Miller observed the defendant outside the automobile, "apparently stomping something on the pavement." Defendant got back into the car as the officers' vehicle approached. Both officers left their vehicle and walked to the stopped car. Officer Ely asked the driver and defendant for identification. The driver produced his. The defendant did likewise, but only after difficulty in locating his billfold and papers. While Officer Ely walked back to the

police car to call for a records check, Officer Miller moved to the right side of the vehicle. There he found a broken hypodermic needle① lying on the pavement in the area where he had previously seen the defendant.

In response to their request for a records check, the officers were advised over police radio that defendant was wanted by the military authorities for being absent without leave from the United States Marine Corps. At Officer Ely's request, the police dispatcher verified the information with the Federal Bureau of Investigation in Portland and with Camp Pendleton where defendant had been stationed, and reported to the officers the confirmation which she received.

The police thereupon took the defendant into custody telling him that "a hold was placed on him by the military, and he would have to come with us." Defendant protested, showing the officers purportedly valid leave papers which he claimed verified his assertions that he was properly on emergency leave. Defendant, nevertheless, was ordered out of the vehicle. Upon making his exit he nearly fell, his walk was very uncertain and his speech was slurred and somewhat incoherent. The defendant told the officers that he had

---

① The motion also sought to suppress the hypodermic needle found on the pavement. At the conclusion of the hearing the court said:

"* * * The Court is going to grant the defendant's motion so far as it relates to item 1, which is a vial containing eight red bullet-shaped capsules with the name Lilly on them, identified as secobarbital; and the Court is going to deny the motion so far as it relates to item 2, which is a broken hypodermic syringe.

"* * * * *

"The Court therefore is going to grant the motion as to item 1."

We assume the order subsequently signed by the court was intended to reflect that ruling.

been drinking all day, although Officer Miller did not smell any alcohol on or about him.

After observing his physical condition and while he was standing outside the car, he was searched. No weapons were found on his person but nine red capsules were found in the defendant's right front pocket, and upon recognizing them as secobarbital, Officer Miller seized the capsules.

Defendant was taken to the Forest Grove police station and then to the Washington County jail, where he was held for the military authorities. Sometime after noon on August 18, it was confirmed that, contrary to the information received earlier, defendant was not absent without leave. He was thereupon released from jail. That afternoon, however, he was arrested for unlawful possession of secobarbital previously found in his pocket.

■ The issue here raised by plaintiff's sole assignment of error is whether the search which produced the capsules was lawful. A reasonable search of a person is valid when made incident to a lawful arrest. *State v. Elk,* 249 Or 614, 439 P2d 1011 (1968); *Chimel v. California,* 395 US 752, 89 S Ct 2034, 23 L Ed 2d 685 (1969). This exception justifies a police officer in making a search for weapons.

> " '* * * When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or affect his escape * * *.' *Chimel v. California,* 395 US 752, 89 S Ct 2034, 23 L Ed 2d 685, 694 (1969)." *State v. Brammeier,* 1 Or App 612, 615, 464 P2d 717, Sup Ct *review denied* (1970).

*Coolidge v. New Hampshire,* 403 US 443, 91 S Ct 2022, 29 L Ed 2d 564 (1971); *State v. Murphy,* 2 Or

App 251, 465 P2d 900, Sup Ct *review denied, cert denied* 400 US 944, 91 S Ct 246, 27 L Ed 2d 248 (1970). Thus the primary questions are: (1) was defendant's initial arrest lawful, and (2) was the search and seizure legal despite the fact that defendant was not, in fact, a deserter?

Authority for the first arrest of the defendant is found in Armed Forces Act, 10 USC § 808:

"Any civil officer having authority to apprehend offenders under the laws of the United States or of a State, Territory, Commonwealth, or possession, or the District of Columbia may summarily apprehend a deserter from the armed forces and deliver him into the custody of those forces. * * *"

Armed Forces Act, 10 USC §§ 807 (a), 809 (d); *Myers v. United States,* 415 F2d 318 (10th Cir 1969); *United States v. Barber,* 300 F Supp 771 (D Del 1969); *Sablowski v. United States,* 403 F2d 347 (10th Cir 1968); *Begalke v. United States,* 286 F2d 606 (Ct Cl), *cert denied* 364 US 865, 81 S Ct 108, 5 L Ed 2d 87, 151 Ct Cl 707 (1960).

In *Myers v. United States,* supra, the court said:

"As to the arrest point, it must be held that it was neither unreasonable nor unlawful for the New Mexico State Police officer, when he observed two young men in military fatigues riding in a car with California plates, to investigate and inquire whether they had the proper leave orders. When they were unable to produce them and when they then volunteered the information that they were AWOL, the officer had the authority and the duty to arrest them. 10 U.S.C. §§ 807, 808 and 809 authorize civil law enforcement officers to apprehend members of the armed forces when absent without leave." 415 F2d at 319.

■ It is clear from the record that, after the officers had checked on defendant's identification, and prior to the search in question, he was advised that the military authorities wanted him held either for being AWOL or for desertion, and that he was to leave the automobile and accompany the officers. We hold the taking of the defendant into custody pursuant to 10 USC § 808 constituted an arrest. *State v. Murphy,* supra, 2 Or App at 255; *State v. Krogness,* 238 Or 135, 139, 388 P2d 120 (1963), *cert denied* 377 US 992, 84 S Ct 1919, 12 L Ed 2d 1045 (1964); *State v. Christensen,* 151 Or 529, 533-34, 51 P2d 835 (1935); ORS 133.210, 133.250.

■ Was that arrest based upon probable cause? The reliance placed by Officers Miller and Ely upon the confirmed reports from police headquarters was proper for they could not reasonably be expected to disregard the officially verified information. *State v. Williams,* 253 Or 613, 615-16, 456 P2d 497 (1969); *State v. Elk,* supra, 249 Or at 619-20; *State v. Jones,* 248 Or 428, 432, 435 P2d 317 (1967); *State v. Hoover,* 219 Or 288, 298-99, 347 P2d 69, 89 ALR2d 695 (1959). *See also,* 10 USC §§ 807, 809.

■ That subsequent information showed defendant not to have been AWOL or a deserter does not detract from the lawfulness of the initial arrest and search and seizure pursuant thereto. Under the circumstances of this case, the police were entitled to do what the law authorized them to do if defendant had, in fact, been a deserter; that is, to make a reasonable search incident to a lawful arrest. *See, Hill v. California,* 401 US 797, 91 S Ct 1106, 28 L Ed 2d 484 (1970); *Commonwealth v. Dial,* 218 Pa Super 248, 276 A2d 314 (1971); *State v. Brown,* 251 Or 126, 444 P2d 957 (1968); *State v. Jones,* supra; *People v. Campos,* 184 Cal App 2d 489,

7 Cal Rptr 513 (1960); *City of McMechen v. Fidelity and Casualty Co. of N.Y.,* 145 W Va 660, 116 SE2d 388 (1960).

■■ Furthermore, the knowledge of the officers of the facts set forth above concerning the very recent narcotics burglary of the drugstore, the information from a reliable informant concerning the defendant's "having some information" about it, the stomping by the defendant of the hypodermic needle into the pavement observed by the officer just prior to any police contact with him, his known prior record as a narcotics violator, and his observed physical condition after he stepped out of the car combined to furnish probable cause that the defendant was under the influence and had possession of narcotics. Thus in addition to the right of the police to search the defendant for weapons arising out of the arrest for being AWOL, they also had the right to search him for narcotics at the time they did so. It was not necessary here for the officers in effect to rearrest the defendant before searching him for narcotics.

In *State v. Cloman,* 254 Or 1, 456 P2d 67 (1969), the police announced to the defendant that they were arresting him on an "after hours" charge when, in fact, they had probable cause to, and did, arrest him for possessing stolen wire. In that case the Supreme Court said:

"* * * The officers' expressed cause for arresting the defendant was a violation of an 'after hours' city ordinance. We believe it reasonable to conclude that the officers gave this cause for arrest because of their uncertainty of the law of probable cause for arrest. We also believe it reasonable to conclude that the actual cause for which the officers arrested Cloman was some charge concerning

the stolen wire. Under these circumstances, we find nothing to be served by holding the arrest invalid because the officers were uncertain about a problem which puzzles the courts. *We hold that if the officers had probable cause to arrest, the arrest made is not rendered illegal because the officers expressed another and improper cause for arrest.*" (Emphasis supplied.) 254 Or at 12.

*See, State v. Keith,* 2 Or App 133, 465 P2d 724, Sup Ct *review denied* (1970); *State v. Temple,* 7 Or App 91, 488 P2d 1380, Sup Ct *review denied* (1971), *cert denied* 406 US 973 (1972).

The arrest being legal, a reasonable search incident thereto is authorized "to enable enforcement officers to gather the fruits of the crime, the implements thereof, and possibly to prevent the destruction of evidence thereof." *State v. Chinn,* 231 Or 259, 267, 373 P2d 392 (1962). We hold that the search of defendant's pockets was valid. *Coolidge v. New Hampshire,* supra; *Chimel v. California,* supra; *State v. Murphy,* supra.

■ In *State v. Elkins,* 245 Or 279, 283-84, 422 P2d 250 (1966), the court stated,

"* * * [However, before an officer has] the right to seize the implement of a crime committed in his presence, other than that for which the arrest was made, he must have reasonable grounds to believe that the article he has discovered is contraband and therefore a crime is being committed. * * *"

Here the evidence established that Officer Miller reasonably believed the capsules to be the dangerous drug secobarbital; thus their seizure was lawful.

It follows that the motion to suppress these capsules should have been denied.

Reversed and remanded.