Submitted May 28, affirmed October 15, 2008, petition for review denied
March 4, 2009 (346 Or 66)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DONALD E. DODGE,
*Defendant-Appellant.*

Multnomah County Circuit Court
050950684; A130897

195 P3d 442

Peter Gartlan, Chief Defender, Legal Services Division, and Susan F. Drake, Senior Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Jeff J. Payne, Assistant Attorney General, filed the brief for respondent.

Before Landau, Presiding Judge, and Schuman, Judge, and Deits, Judge pro tempore.

SCHUMAN, J.

**SCHUMAN, J.**

Defendant appeals from a judgment of conviction for possession of a controlled substance. *Former* ORS 475.992(4) (2003), *renumbered as* ORS 475.840(3) (2005). He argues that police unlawfully arrested him and that, therefore, the trial court erred in denying his motion to suppress a glass pipe that was found on him during that arrest. He also argues that the trial court erred in admitting the laboratory results determining that the pipe contained traces of cocaine. That evidence was inadmissible, he argues, because the officers did not have probable cause to test the residue in the pipe. We affirm.

The trial court made the following undisputed findings of fact. Before going out on patrol in downtown Portland, Officer Lindsey and Officer Simon noticed defendant's name on the "unentered warrant" list, a document compiled by the community court listing warrants that have been issued but have not yet been entered into the system. Lindsey and Simon recognized defendant's name on the list; they knew him from prior encounters during their time working in downtown Portland.

That evening, while Lindsey and Simon were on patrol, they saw defendant. Lindsey got out of the patrol car and ordered him to stop, telling him that there was a warrant for his arrest. Defendant attempted to run away, but the officers caught him less than a block away. After a struggle, Simon handcuffed defendant and searched him. In one pocket, he found an object described as a glass tube pipe. The pipe contained residue that was later tested and found to contain traces of cocaine. Defendant was charged with possession of a controlled substance. At the hearing on defendant's motion to suppress, the state did not offer into evidence the "unentered warrant" list, the warrant, or the glass pipe. It did, however, enter the laboratory report stating that the residue in the pipe was cocaine.

■ Defendant argues first that the glass pipe should have been suppressed because it derived from an arrest that the state failed to prove was justified by probable cause; the state, he points out, never produced the arrest warrant or the

unentered warrant list. In addressing that argument, we are bound by the trial court's findings of historical fact if there is any evidence to support them, but we review the legal conclusions drawn from those facts for errors of law. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). Probable cause to arrest has a subjective and an objective component. *State v. Miller*, 345 Or 176, 186, 191 P3d 651 (2008). The trial court found that the officers saw defendant's name on an unentered warrant list, and that finding is supported by the evidence, in particular, by the officers' testimony to that effect. They therefore subjectively believed that a court had issued a warrant authorizing defendant's arrest; "the subjective component of the probable cause inquiry is satisfied if the officer believes that he or she has lawful authority to restrain the individual's liberty," *id.* at 185, and an arrest warrant authorizes any police officer to arrest the person named in it, ORS 133.140(6).

Further, Simon testified, and the court had no reason to doubt, that

> "[w]e get a weekly unentered sheet, it's called, which is the warrants coming out of the Community Court. They come out every Wednesday afternoon, and we pick them up right as they come out."

It is objectively reasonable for an officer who sees a person's name on such a document to believe that the court has issued a warrant for that person's arrest.

Even if the officers were mistaken, and no valid warrant for defendant's arrest existed, the officers had a right to rely on the unentered warrant list. In *State v. Somfleth*, 8 Or App 171, 492 P2d 808 (1972), police officers saw the defendant, who, they believed, might have been involved in a recent burglary, in a parked car. The officers stopped the defendant and began to investigate him. *Id.* at 173. While they were talking to the defendant, they received a response to their records check indicating that the defendant was wanted by military authorities. The defendant was arrested on the basis of the military hold. *Id.* at 174. After the officers took the defendant into custody, they searched him and found a controlled substance. The police later learned that

they had received inaccurate information and that the defendant was not wanted by the military. *Id.* at 175. The defendant moved to suppress the evidence on the ground that the arrest was unlawful. We rejected that argument, concluding that the arrest was based on probable cause because the officers "could not reasonably be expected to disregard the officially verified information." *Id.* at 177; *see also State v. Steinke*, 88 Or App 626, 630, 746 P2d 758 (1987) (traffic stop based on report that the defendant had a restraining order violation was lawful even though officer later discovered that the restraining order was invalid); *State v. Perry*, 39 Or App 37, 42, 591 P2d 379 (1979) (traffic stop was lawful where officer relied on information from the police dispatcher and that information turned out to be incorrect).

The officers who arrested defendant, then, subjectively believed that they were authorized to do so by virtue of a warrant, and that belief was objectively reasonable. The arrest was therefore valid. The trial court concluded further that the glass pipe was seized pursuant to a valid Portland Police Bureau inventory policy, and defendant does not contest that conclusion on appeal. The pipe, therefore, was lawfully seized.[1]

■       Defendant argues that, even if the officers lawfully seized the pipe, subjecting its contents to chemical testing amounted to a warrantless search that did not fall within any exception to the warrant requirement. The state responds that a transparent container "announces its contents" and that, therefore, those contents could be tested without a warrant. In the alternative, the state argues that the officers had probable cause to subject the contents of the pipe to chemical testing and that, under *State v. Owens*, 302 Or 196, 729 P2d 524 (1986), the testing was therefore lawful.

---

[1] The trial court ruled that the officer had probable cause by virtue of the so-called "collective knowledge" doctrine. *State v. Pratt*, 309 Or 205, 216, 785 P2d 350 (1990). We resolve the issue on a slightly different basis, also argued to the trial court on a fully developed factual record. *See Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001) (outlining when appellate court may affirm trial court's decision on a basis other than that upon which the trial court relied).

■     We have noted the confusion surrounding the relationship between a so-called "announces its contents" analysis and a "plain view" analysis with respect to the seizure of transparent containers. *State v. Heckathorne*, 218 Or App 283, 288-89, 179 P3d 693, *rev allowed*, 345 Or 158 (2008); *State v. Stock*, 209 Or App 7, 11 n 1, 146 P3d 393 (2006). Because we have concluded that the container in this case was lawfully seized, however, we need only determine whether the officers had probable cause to believe that the pipe contained a controlled substance to conclude that the testing was lawful. That rule is well settled:

> "[W]e hold that, *when there is probable cause* to believe that a *lawfully seized* transparent container contains a controlled substance, opening the container, removing a modest quantity of its contents and subjecting it to chemical analysis for the sole purpose of confirming that it is a controlled substance, is not a 'search' or 'seizure' under the Oregon Constitution."

*Owens*, 302 Or at 207 (emphasis added). It is also well settled that, as noted above, probable cause has a subjective and an objective component.

     In the present case, the trial court found as fact that one of the officers believed that the pipe contained incriminating evidence. We are bound by that finding if it is supported by any evidence. The court based its finding on the officer's testimony that "he had put the glass pipe into evidence," stating, "I think that's enough to make an inference that [the officer] thought the glass pipe contained evidence of a crime." Certainly, the court's inference is not the only one that could be drawn from the facts, but that is not our standard of review; our standard requires us to accept the inference if a reasonable juror could draw it, and, under that standard, the evidence was sufficient.

■     Further, the facts of which the officer was cognizant when he acquired the belief that the pipe contained incriminating evidence are sufficient to establish that the belief was objectively reasonable. When the officers called out to defendant, he ran away. Flight is relevant circumstantial evidence of guilty knowledge. *State v. Wilson*, 172 Or 373, 381, 142 P2d 680 (1943); *State v. Minchue*, 173 Or App 520, 524, 24 P3d

386 (2001). When caught, defendant resisted arrest and had to be forcibly tackled. That action, as well, is relevant to the probable cause inquiry. *See State v. Lane,* 135 Or App 233, 242, 898 P2d 1358, *rev den,* 322 Or 360 (1995) (suspect's furtive or evasive behavior may contribute to probable cause). When the officers found the glass pipe in defendant's pocket, he disavowed ownership, claiming that he had "just found" it and "picked it up." And a glass pipe, while not an object that necessarily announces its function or contents to the world at large, is nonetheless an unusual object that reasonable people might regard as suspicious. Under all of these circumstances, the officers' belief that the glass pipe contained incriminating evidence was objectively reasonable.

In sum, the police officers had probable cause to arrest defendant based on their knowledge that his name appeared on an "unentered warrant" list; they lawfully seized the glass pipe pursuant to an inventory policy; and they had probable cause to submit the pipe and its contents for chemical testing.

Affirmed.