Argued and submitted August 5, 2020, reversed and remanded
October 20, 2021

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

BRYAN LEE PERRODIN,
*Defendant-Appellant.*

Lane County Circuit Court
18CR42230; A169186

500 P3d 704

Defendant appeals from a judgment of conviction for unlawful delivery of methamphetamine, unlawful possession of cocaine, and two counts of felon in possession of a firearm. In the trial court, defendant moved to suppress the evidence discovered subsequent to his warrant-based arrest, alleging that the arrest warrant was not supported by a sworn statement of probable cause. The state asserted that the arrest was authorized by a valid warrant but did not produce the warrant as evidence. On appeal, defendant contends that the trial court erred in denying his motion to suppress. *Held*: To adequately respond to defendant's challenge, the state needed to either produce the warrant or prove that the arrest was lawful as a warrantless arrest supported by probable cause. The state did neither. Because the trial court concluded that the arrest was authorized by a warrant despite the fact that no warrant was admitted into evidence, the court erred in denying defendant's motion to suppress all evidence discovered as a result of the arrest.

Reversed and remanded.

Maurice K. Merten, Judge.

Kyle Krohn, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

David B. Thompson, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, and Shorr, Judge, and Powers, Judge.

SHORR, J.

Reversed and remanded.

**SHORR, J.**

Defendant appeals from a judgment of conviction for unlawful delivery of methamphetamine, unlawful possession of cocaine, and two counts of felon in possession of a firearm. Although defendant raises five assignments of error in total, we need only address the first: the contention that the trial court erred in denying his motion to suppress evidence discovered after he was arrested pursuant to a "parole violation warrant." In the trial court, defendant argued that the arrest violated his rights under Article I, section 9, of the Oregon Constitution and alleged that the warrant was invalid because it failed to include any oath or affirmation. The state asserted that the arrest was authorized by a valid warrant but did not produce the warrant as evidence. For the reasons that follow, we reverse and remand for further proceedings.[1]

In reviewing the denial of a motion to suppress, we are bound by the trial court's factual findings if constitutionally sufficient evidence in the record supports them. *State v. Ehly*, 317 Or 66, 74-75, 854 P2d 421 (1993). Where the court did not make express factual findings, we presume that the facts were decided in a manner consistent with the court's ultimate conclusion. *State v. Middleton*, 294 Or App 596, 597, 432 P3d 337 (2018). We state the relevant facts consistently with that standard.

Detective Seanor received information that defendant was dealing methamphetamine. An investigation followed in which Seanor searched for defendant in an unnamed "law enforcement database" and discovered that defendant had "a felony warrant for his arrest" related to an "underlying charge" for delivery of methamphetamine. Seanor did not see "the physical warrant with the judge's signature" or observe an affidavit, but only saw "the computer entry that flagged the warrant." Seanor believed that the warrant was a "parole and probation warrant."[2]

---

[1] Defendant's second, third, fourth, and fifth assignments of error allege various sentencing errors. Because we reverse and remand for further proceedings on the basis that the trial court erred in denying defendant's motion to suppress all the evidence in this case, we need not reach those remaining assignments.

[2] The record does not clearly establish whether the "warrant" in question was a warrant in the usual sense or a supervisory authority order, as authorized

Seanor and other detectives briefly surveilled defendant and observed him leave an apartment, get into a van, and drive into another part of the same apartment complex. When defendant stopped, Seanor parked behind him and arrested him on the "parole violation warrant." Subsequent to the arrest, Seanor asked defendant if he had any "drugs" on him, and defendant admitted that he had "drugs" in his pocket. Seanor searched defendant and discovered methamphetamine, a small bag of cocaine, and $1,000 in cash. Detectives next searched defendant's van, where a half pound of methamphetamine, $4,000 cash, and two firearms were discovered. Detectives applied for and were granted a search warrant for the apartment based on the above facts. A third firearm was discovered in the apartment.

Defendant filed a variety of pretrial motions. As relevant here, he contended in his first motion to suppress that

> "[t]he arrest and subsequent search of [defendant] was unlawful. In order to be a lawful arrest on a warrant[,] the warrant must be based on probable cause, supported by oath or affirmation. The warrant in this case was not supported by any oath or affirmation and lists no probable cause on its face. As such, the arrest was illegal and any and all evidence stemming from the arrest must be suppressed."

(Internal citation omitted.) The state filed a response, contending that "[t]he defendant was validly stopped and arrested pursuant to a parole violation warrant." The state argued that,

> "[p]ursuant to ORS 144.360, parole violation warrants are afforded the same treatment under the law as any other warrant. Prior to surveilling the [apartment], Detective Seanor confirmed that the defendant had an outstanding parole violation warrant. Detective Seanor identified the defendant as he left [the apartment]. Upon making contact with the defendant, Detective Seanor had reasonable grounds to arrest the defendant for the outstanding parole violation warrant."

---

by ORS chapter 144. In both trial and appeal arguments, the parties treat the alleged authority to arrest defendant as a warrant and, for purposes of this appeal, we assume, without deciding, that it was. *Cf.* ORS 144.360 (stating that "all the laws applicable to warrants of arrests shall apply to [supervisory authority] orders").

At a hearing on the motion to suppress, Seanor testified to the above facts regarding his investigation and arrest of defendant. No other witnesses were called, and no exhibits were admitted as evidence. Importantly, neither party admitted the warrant itself.

In its closing argument at the suppression hearing, the state first asserted that "this is the first time the defense is challenging the validity of the underlying parole violation warrant. If he wishes to do so he needs to file a motion and we will hear that before trial I suppose." Defense counsel responded that he *had* challenged the validity of the underlying warrant in a written motion to suppress and directed the court to the relevant section. The following exchange then occurred:

"THE COURT:   I assume, I assume you rely on the regularity of, that a warrant, unless proven otherwise, is a warrant.

"THE STATE:   That's correct, Your Honor. With regards to the rest of the motion to suppress, the State has very clearly outlined, in its response, its viewpoint that [defendant] was stopped and arrested pursuant to a valid parole violation warrant."

The state made no further argument regarding the arrest itself.

In defendant's closing argument, he asserted that "there's no evidence that the State has presented about the validity of the warrant." Citing *State v. Noble*, 314 Or 624, 842 P2d 780 (1992), *State v. Beckstead*, 164 Or App 538, 994 P2d 174 (1999), and *State v. Brown*, 96 Or App 171, 772 P2d 429 (1989), he contended that "[o]nce raised, this is on the State to prove the validity of that warrant." Defendant added that,

"before we filed the motion, we contacted the board of parole and probation, asked if there was an affidavit for the warrant.

"They told us there wasn't, that it was just a text from an officer requesting that the parole board issue a warrant. That's not sufficient to be a valid warrant under the constitution and under the cases cited.

"Without a valid warrant there's really no point in moving on if he's, invalidates the entire arrest, everything else flows from that arrest."

Finally, in a one-sentence rebuttal argument, the state "reiterat[ed] that warrants are presumptively valid."

The trial court denied defendant's suppression motion. As to the arrest itself, the court made no factual findings and stated only, "I find that the defendant was appropriately and lawfully arrested on an outstanding warrant, as, that existed in the database." The parties proceeded to a bench trial, and defendant was convicted on all counts.

As explained above, defendant assigns error to the trial court's denial of his motion to suppress the evidence discovered subsequent to his warrant-based arrest. We review such rulings for legal error. *Ehly*, 317 Or at 74-75.

On appeal, defendant argues that, once he challenged the arrest warrant as invalid and alleged that it was not supported by oath or affirmation, that "placed the burden on the state to present evidence that the warrant was supported by oath or affirmation." Although defendant admits that, "in other contexts, the usual rule is that a defendant has the burden of proving the invalidity of a warrant and the state has the burden of proof only when it defends a warrantless search or seizure," he contends that that rule is inapplicable when a defendant alleges that a warrant lacks any oath or affirmation establishing probable cause. The state, on the other hand, contends that defendant's arrest was "constitutionally reasonable" because Seanor had subjective and objective probable cause to believe that defendant's arrest was authorized by a warrant. The state contends that its failure to produce the warrant is irrelevant. In support of that argument, the state cites *State v. Dodge*, 223 Or App 130, 195 P3d 442 (2008), *rev den*, 346 Or 66 (2009), where we affirmed the trial court's denial of the defendant's motion to suppress the evidence under similar circumstances. In the state's assessment, we "need not decide the 'burden' question" that defendant raises. In turn, defendant asserts that *Dodge* is distinguishable and, if not, "plainly wrong."

We begin by considering whether our holding in *Dodge* controls the outcome of this case, as the state asserts. In *Dodge*, officers had noticed the defendant's name on an "'unentered warrant' list, a document compiled by the community court listing warrants that have been issued but have not yet been entered into the system." 223 Or App at 132. The officers knew the defendant due to previous encounters and saw him downtown later that same day. *Id.* The defendant was arrested and searched, leading to the discovery of evidence. *Id.*

Our opinion in *Dodge* is sparse on what happened procedurally. We related that the defendant filed a motion to suppress challenging the lawfulness of the arrest, but we did not clarify whether he challenged the warrant, asserted that the arrest was not lawful as a warrantless arrest because it was not supported by probable cause, or both. *Id.* Likewise, our opinion is unclear as to how the state defended the arrest and on what theory or theories. We related only that, at the hearing on that motion, the state did not admit the "unentered warrant" list or the warrant itself. *Id.* The trial court denied the motion. *Id.*

On appeal, we framed the defendant's assignment of error as contending that the evidence "should have been suppressed because it derived from an arrest that the state failed to prove was justified by probable cause; the state, he points out, never produced the arrest warrant or the unentered warrant list." *Id.* at 132-33. We then proceeded to apply our law controlling warrantless arrests, analyzing whether the officers possessed subjective and objective probable cause to arrest the defendant. *Id.* at 133.

We first analyzed subjective probable cause, concluding that the officers' testimony that they had seen the defendant's name on an unentered warrant list was sufficient to establish that the officers believed that they had "lawful authority to restrain the individual's liberty." *Id.* (citing *State v. Miller*, 345 Or 176, 185, 191 P3d 651 (2008)). We then analyzed whether that subjective belief was objectively reasonable. *Id.* Testimony established that the list showed unentered warrants from the community court and that the officers picked up the list every week as soon as it

was published. *Id.* In light of that evidence, we concluded that it was "objectively reasonable for an officer who sees a person's name on such a document to believe that the court has issued a warrant for that person's arrest." *Id.* Lastly, we explained that the officers would have had probable cause to arrest the defendant under these circumstances even if it was later discovered that a valid arrest warrant did not actually exist. *Id.* In doing so, we relied primarily on a Vietnam War-era case that cited both state and federal case law in holding that police had probable cause to arrest an individual who they reasonably believed, based on reports from dispatch, was wanted by military authorities for desertion, even though it was later discovered that that information was false. *Id.* at 133-34 (citing *State v. Somfleth*, 8 Or App 171, 492 P2d 808 (1972)).

Having concluded that the officers had probable cause to arrest the defendant, we affirmed the denial of the defendant's motion to suppress. *Id.* at 134. In a footnote to that ultimate conclusion, we clarified that, even though the trial court had concluded that the arrest was lawful based on a slightly different theory, our affirmance was appropriate because subjective and objective probable cause was "also argued to the trial court on a fully developed factual record." *Id.* at 134 n 1.

Although our opinion in *Dodge* was admittedly unclear in some respects, several key takeaways are apparent. First, even though the evidence supported that the officers believed that there was a valid warrant for the defendant's arrest, we did not apply our law regarding warrants in our analysis. Instead, we analyzed the seizure under our warrant exception law, the body of law that generally applies when the arresting officers do not possess a warrant. This is evident from our analysis of whether the officers possessed subjective and objective probable cause to arrest the defendant. Second, even though our summary of the relevant procedural facts was sparse, we can assume that the parties litigated whether the arrest was a valid warrantless arrest in the trial court. Although not explicitly stated, that conclusion is evident from our application of the "right for the wrong reason" doctrine and our assertion that the basis for our decision—that the officers possessed subjective and

objective probable cause to make a warrantless arrest—was "also argued to the trial court on a fully developed factual record." *Id*.

In light of the above, we understand *Dodge* to stand for the proposition that, when an officer arrests an individual based on the belief that there is a warrant for that person's arrest, the court need not decide the validity of the underlying arrest warrant *if* the state argues, and proves, that the arrest was valid under our warrant exception law—specifically, that the officers possessed subjective and objective probable cause to arrest the defendant without a warrant. Under those specific circumstances, the state need not establish the actual existence or validity of the warrant and, as a result, need not admit the warrant into evidence either. The facts in *Dodge* were such that the state *did* argue and prove that the officers possessed probable cause to make a warrantless arrest. As a result, the state's failure to admit the warrant into evidence was of no import in that case.[3]

In the instant case, however, the procedural history below was markedly different. Defendant challenged his arrest on the basis that the warrant that allegedly authorized it was essentially facially defective, contending that the warrant did not contain a sworn statement. The state contended, in a written response to defendant's motion and in argument before the trial court, that the arrest was lawful because it was supported by a valid warrant. However, the state never produced the warrant in response to defendant's challenge. The state also never raised the alternative or additional argument that the arrest was valid as a warrantless arrest supported by probable cause, and the officers never testified that they believed they had probable cause to arrest defendant.

---

[3] We ultimately conclude that *Dodge* is distinguishable from the instant case, and, for that reason, we need not address defendant's argument that *Dodge* is "plainly wrong." There may be unresolved questions about *Dodge*'s analysis that we leave for another day; that said, we note that, although our opinion in *Dodge* failed to elaborate on the arguments litigated before the trial court, the briefing submitted by the parties on appeal did. The procedural history and the arguments on appeal recounted in the parties' briefs are consistent with our conclusion that the parties fully litigated the issue of whether the arrest was valid as a warrantless arrest supported by probable cause. In any event, addressing whether *Dodge* is plainly wrong is not necessary to our consideration of the merits of the instant case.

The state does not acknowledge those procedural distinctions between the instant case and *Dodge*. Instead, the state asks us to read the trial court's conclusion that "defendant was appropriately and lawfully arrested on an outstanding warrant, as, that existed in the database" as a determination by the court that defendant's arrest was valid as a warrantless arrest supported by probable cause, even though the state never raised that theory and the parties made no arguments to that effect below. We decline to interpret the court's unclear ruling in such a fashion. The only interpretation of the court's ruling that is supported by the arguments and evidence below is that the court was concluding that defendant's arrest was lawful because it was authorized by an arrest warrant. Thus, because *Dodge* addressed a legal issue that was not raised to the trial court in the instant case, it does not instruct our analysis.[4]

Our law regarding the oath and affirmation requirement is well established. Article I, section 9, provides that

> "[n]o law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and *no warrant shall issue but upon probable cause, supported by oath, or affirmation*, and particularly describing the place to be searched, and the person or thing to be seized."

(Emphasis added.) Except for limited exceptions, all warrants must be supported by oath or affirmation. *Noble*, 314 Or at 632 ("[W]e hold that Article I, section 9, of the Oregon Constitution requires that, before a bench warrant for the arrest of a person may issue for any conduct other than conduct occurring in the presence of the court (as we have explained that concept), the issuing magistrate must determine that there exists probable cause supported by a sworn statement."); *see also State v. Nunn*, 99 Or App 503, 505,

---

[4] To the extent that the state would have us affirm this case as a valid warrantless arrest supported by probable cause pursuant to our "right for the wrong reason" doctrine, we decline to do so here, where the state made no argument on appeal that we should do so and where the record could have been different had a warrant exception theory been raised below. *See Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 660, 20 P3d 180 (2001) ("[I]f the losing party might have created a *different* record below had the prevailing party raised that issue, and that record could affect the disposition of the issue, then we will not consider the alternative basis for affirmance." (Emphasis in original.)).

783 P2d 26 (1989) ("Article I, section 9, does not specify a procedure for determining whether an affidavit is supported by oath or affirmation; it simply requires that it, in fact, be so supported."). When a court determines that the warrant authorizing a search or seizure did not contain a sworn statement of probable cause, evidence discovered as a result of that search or seizure is subject to suppression. *Noble*, 314 Or at 632.

Thus, a warrant must be supported by a sworn statement of probable cause and is constitutionally defective if it is not. And although defendant proposes that it is unclear under our existing law who bears the burden when a warrant is challenged as defective for that reason, we disagree. When the state chooses, as it did here, to defend an arrest on the theory that it was predicated on a valid warrant, the state bears an initial burden to *produce* that warrant, before the ultimate burden of proof shifts to the defendant to *prove* the alleged defect.

The general rule is that the state bears the burden of proof in a suppression hearing when a search or seizure is warrantless, and the defendant bears the burden of proof when the search or seizure is authorized by a warrant. *State v. Walker*, 350 Or 540, 553, 258 P3d 1228 (2011); *see also State v. Johnson*, 335 Or 511, 520, 73 P3d 282 (2003) ("[W]hen state agents have acted under authority of a warrant, the burden is on the party seeking suppression (*i.e.*, the defendant) to prove the unlawfulness of a search or seizure."). When a defendant challenges a warrant-based search or seizure, we apply the principle that warrants are presumptively valid. *Walker*, 350 Or at 554. Those general rules remain.

However, we cannot apply the rule that "warrants are presumptively valid" when a defendant effectively challenges the *existence* of the warrant or supporting affidavit, and the state then fails to produce the warrant or affidavit within its control. For certain warrant challenges, the court need only look to evidence outside the warrant. In *State v. Hall*, for instance, we considered whether it was erroneous for the trial court to grant a motion to suppress because the state had failed to introduce the warrant, when the motion

had conceded that the warrant existed and only raised a challenge to the proper scope of the officers' search. 166 Or App 348, 357, 999 P2d 509 (2000). We concluded that "[t]he terms of the warrant are not necessary for our resolution of defendants' argument, nor was the state required to produce the initial warrant into evidence." *Id.* at 359.

However, other warrant challenges require that the court look to the warrant or affidavit itself. In *State v. Jennings*, for instance, we considered whether a "duplicate original written warrant" that authorized the search for and seizure of certain evidence was more expansive than the issuing judge's prior oral authorization. 220 Or App 1, 3-4, 184 P3d 1200 (2008). We began our analysis by summarizing the "well[-]settled" principles governing our review, including that, "[b]y introducing the [written] warrant at the hearing on defendant's motion to suppress, the state made a *prima facie* case that the search was lawful; the burden then shifted to defendant to prove that the warrant was invalid." *Id.* at 4-5; *see also Hall*, 166 Or App at 357 (noting that, had the defendant challenged the existence of a valid warrant, "the state would have had the burden of establishing the existence of the warrant[ ]"). In short, whether the state carries a burden to produce the warrant in a suppression hearing depends on both the nature of the defendant's challenge, and the nature of the state's defense to that challenge. *See, e.g.*, Wayne R. LaFave, 6 *Search and Seizure* § 11.2(b), 49, 63 (6th ed 2020) (explaining that "[i]t is not inevitably true that the burden of production and the burden of persuasion must both fall upon the same party" and that policy considerations may favor placing "the burden of production on the party who has the greater access to the relevant facts").

We conclude that the burden of production discussed in *Jennings* is applicable here. When a defendant moves to suppress evidence discovered following his warrant-based arrest on the grounds that the warrant was invalid because it was not supported by oath or affirmation, the state, in turn, is faced with two choices—to defend the arrest as supported by a valid warrant, or, alternatively, to present and prove a case that the arrest was valid as a warrantless arrest supported by probable cause. When the state chooses to proceed on the first theory, the state must produce the

warrant. Once that initial showing is made, the burden shifts to the defendant to prove that the warrant was in fact invalid.[5]

We apply the above conclusions to the instant case. Here, defendant moved to suppress the evidence discovered subsequent to his warrant-based arrest, alleging that the arrest warrant was not supported by a sworn statement of probable cause. To adequately respond to that challenge, the state needed to either produce the warrant or prove that the arrest was lawful as a warrantless arrest supported by probable cause. The state did neither. Because the trial court concluded that the arrest was authorized by a warrant despite the fact that no warrant was admitted into evidence, the court erred in denying defendant's motion to suppress all evidence discovered as a result of the arrest. That error directly led to defendant's convictions and was not harmless. As a result, we reverse and remand to the trial court to enter an order suppressing all evidence in this case, including defendant's statements, the evidence discovered on defendant's person, the evidence discovered in the van defendant was driving, and the evidence subsequently seized via search warrant from the apartment defendant had been observed leaving prior to his arrest.

Reversed and remanded.

---

[5] We state no opinion on whether the state must produce the warrant in response to other types of warrant challenges not at issue in this case.