Argued and submitted November 8, 2021, reversed and remanded
January 12, 2022

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

HEATHER M. PITZ,
*Defendant-Appellant.*

Coos County Circuit Court
19CR34784; A173827

504 P3d 685

Days after defendant's term of probation ended, the state moved for an order requiring her to appear and show cause why her probation should not be revoked for certain violations. The trial court issued an order to show cause the following day, apparently unaware that it no longer possessed the statutory authority to do so. When defendant failed to appear before the court, a warrant was issued for her arrest. Defendant's later arrest on that warrant led to the search of a lunchbox in her possession, the discovery of drug evidence, and her indictment for unlawful possession of methamphetamine. Defendant moved to suppress the evidence, contending that it was discovered as a result of her unlawful arrest on an invalid warrant. That motion was denied; although the trial court agreed that the warrant was invalid, it concluded that defendant had voluntarily consented to the search, purging any taint from the earlier constitutional violation. On appeal, defendant contends that her arrest was unlawful and that her later consent to the search was involuntary and the product of police exploitation of the prior illegal arrest. *Held*: Defendant was unlawfully arrested on an invalid warrant, and the state failed to meet its burden to prove that the police had not exploited that illegal arrest in obtaining defendant's consent to search her lunchbox.

Reversed and remanded.

Martin E. Stone, Judge.

Peter G. Klym, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Shannon T. Reel, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, and Shorr, Judge, and Powers, Judge.

SHORR, J.

Reversed and remanded.

**SHORR, J.**

Four days after defendant's term of probation ended, the state moved for an order requiring her to appear and show cause why her probation should not be revoked for certain violations. The trial court issued an order to show cause the following day, apparently unaware that it no longer possessed the statutory authority to do so. When defendant failed to appear before the court, a warrant was issued for her arrest. Defendant's later arrest on that warrant led to a police search of a lunchbox in her possession, the discovery of drug evidence, and her indictment for unlawful possession of methamphetamine.

Before the court on the methamphetamine charge, defendant moved to suppress the evidence, contending that it was discovered as a result of her unlawful arrest on an invalid warrant. That motion was denied. Although the trial court agreed that the warrant was invalid, it concluded that defendant had voluntarily consented to the search, purging any taint from the earlier constitutional violation. For the reasons that follow, we conclude that the trial court erred and reverse and remand.

On review of a trial court's denial of a motion to suppress, we are bound by the trial court's factual findings if constitutionally sufficient evidence supports them. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). "If findings of historical fact are not made on all pertinent issues and there is evidence from which such facts could be decided more than one way, we will presume that the facts were decided in a manner consistent with the court's ultimate conclusion." *Id*. We state the facts in accordance with those standards.

On January 19, 2016, defendant was convicted of nine counts of first-degree criminal mistreatment and sentenced to 36 months of supervised probation. Defendant's probation was set to expire on January 18, 2019.

On January 22, 2019, the state moved for an order requiring defendant to appear and show cause why her probation should not be revoked. That motion relied on a probation violation report from January 9, 2019, that alleged that defendant had violated the conditions of her probation by

failing to pay supervision fees and restitution. On January 23, 2019, the trial court issued an order to show cause and ordered defendant to appear on February 6, 2019. When defendant failed to appear before the court on February 6, the court issued a probation violation warrant. That warrant relied on a "general order/affidavit" that referenced the "DA's affidavit on file."

On February 9, 2019, Sergeant Schwenninger with the Coos Bay Police Department was notified that defendant was at an area hospital and that a warrant had issued for her arrest. Dispatch "confirm[ed] the warrant" for Schwenninger as he drove towards the hospital.[1] Schwenninger testified that he did not know any details about the warrant or what it was for, but that he was required to act on the confirmed warrant by arresting defendant. While Schwenninger was still en route to the hospital, law enforcement officers from other agencies who happened to already be at the hospital offered to arrest defendant. Schwenninger accepted, and defendant was already arrested when Schwenninger arrived at the hospital.

As other officers prepared to transport defendant to jail, defendant asked Schwenninger to "make some arrangements for kind of a lunchbox cooler item that she had with her." Schwenninger told defendant that she could hand her possessions over to a friend, but that that person would need to come to the hospital within the next 10 to 15 minutes. Unable to meet those requirements, defendant "asked [Schwenninger] to take possession" of her lunchbox and turn it over to her friend "at some later time." Schwenninger responded that he would only consider taking possession of the lunchbox if he knew that it did not contain "illegal or dangerous substances." Defendant told Schwenninger that the lunchbox contained jewelry and tobacco, but when Schwenninger asked for consent to search the lunchbox, defendant declined. Schwenninger explained that, if there was no one at the hospital that defendant could turn the lunchbox over to, it would have to go with her to the

---

[1] Schwenninger testified regarding the warrant verification process and explained that dispatch confirms warrants by contacting the originating agency and asking that agency to pull and verify the original, paper warrant.

jail.[2] Around that time, another officer loaded defendant into a police vehicle for transport while Schwenninger left the hospital separately.

A couple minutes later, Schwenninger was contacted over the radio and asked to return to the hospital because defendant wanted to speak with him. Schwenninger returned to the hospital and opened the back door of the police vehicle where defendant was seated. Schwenninger testified that defendant told him, unprompted, "that she wanted [him] to take possession of the bag and wanted [him] to search it. She told [him] that there was methamphetamine in the front pocket." Schwenninger explained to defendant that she could withdraw her consent at any time, then searched the lunchbox, discovering methamphetamine.

Three days after defendant's arrest, the state moved to dismiss its motion to revoke defendant's probation, citing the "interest of justice" and the fact that "[t]he Court no longer has jurisdiction." That motion was granted and a judgment of dismissal was entered the following day.

Defendant was indicted for felony unlawful possession of methamphetamine due to the methamphetamine discovered in her lunchbox. Defendant moved to suppress the evidence against her on the grounds that it would not have been discovered but for her unlawful arrest on an invalid arrest warrant. Specifically, defendant argued that the warrant violated Article I, section 9, of the Oregon Constitution because it was not supported by probable cause. Defendant cited ORS 137.545(2), which explains that warrants for probation violations may issue "[a]t any time during the probation period." Because defendant was no longer on probation when the court issued the order to show cause, she argued, it lacked authority to compel her presence or issue a warrant for her arrest when she failed to appear at the probation violation hearing. Alternatively, defendant argued that her consent to the search of her lunchbox was not voluntary because both choices presented to her would result in the search of her property: She could consent to a search at the

---

[2] Defendant initially requested permission to give the lunchbox to her minor niece who was receiving treatment in the hospital's "mental health ward." Schwenninger denied permission due to the niece's age and condition.

hospital, or her property would be searched without her consent once she arrived at the jail. Defendant also contended that any consent "was not voluntary enough to attenuate the taint of the invalid warrant."

In response, the state argued that the arrest warrant was facially valid because it was signed by a magistrate and supported by oath or affirmation. While conceding that the order to show cause and arrest warrant were both issued after defendant's probation had expired, the state argued that those issues did not create a constitutional violation requiring suppression, and instead only provided defendant with a defense against a probation violation sanction. In the alternative, the state argued that even if the warrant was invalid, the officers did not exploit that illegality in obtaining defendant's voluntary consent.

The trial court denied the motion to suppress, concluding that, although the warrant was invalid due to its issuance after defendant's probation had expired, defendant had voluntarily consented to the search of her lunchbox, purging any taint from the prior illegal arrest. The court also found that Schwenninger had not exploited the prior illegality in obtaining that consent. Defendant entered a conditional guilty plea, reserving the right to appeal the denial of her motion to suppress. This timely appeal followed. We review the denial of defendant's motion to suppress for legal error. *Ehly*, 317 Or at 75.

On appeal, defendant reprises her arguments from the trial court, contending that the warrant authorizing her arrest was invalid because it was not supported by probable cause that she committed a probation violation. Defendant further contends that her later consent to search was involuntary and the product of police exploitation of the prior illegal arrest. The state, however, shifts its argument from that presented in the trial court. The state now contends that defendant's arrest was lawful because Schwenninger acted on an objectively reasonable belief that a valid warrant authorized defendant's arrest. That argument relies on *State v. Dodge*, where we concluded that police had lawfully arrested a defendant based on their reasonable belief that a valid warrant authorized the arrest, despite the fact

that the state never produced the warrant at the suppression hearing. 223 Or App 130, 195 P3d 442 (2008), *rev den*, 346 Or 66 (2009). In the alternative, the state contends that defendant's consent to the search was voluntary and that the police did not exploit any prior unlawful conduct in obtaining that consent. Defendant replies that *Dodge* is either distinguishable, or if not, bad law.

After briefing in this case was completed but before oral argument had occurred, we decided *State v. Perrodin*, 315 Or App 252, 500 P3d 704 (2021). In *Perrodin*, the defendant was arrested on a parole violation warrant and moved to suppress evidence discovered subsequent to that arrest by arguing that the arrest was unlawful because the warrant lacked an oath or affirmation of probable cause. *Id.* at 254. In response, the state did not produce the warrant or alternatively argue that the arrest was a valid warrantless arrest supported by probable cause. *Id.* at 254-56. On appeal, the state raised the same argument that it presents in the instant case, contending that the defendant's arrest was "constitutionally reasonable" under *Dodge* because the arresting officer had subjective and objective probable cause to believe that the arrest was authorized by a valid warrant. *Id.* at 256. We rejected the state's application of *Dodge*, and concluded that *Dodge* stood

> "for the proposition that, when an officer arrests an individual based on the belief that there is a warrant for that person's arrest, the court need not decide the validity of the underlying arrest warrant *if* the state argues, and proves, that the arrest was valid under our warrant exception law—specifically, that the officers possessed subjective and objective probable cause to arrest the defendant without a warrant."

*Id.* at 257-59 (emphasis in original). We stated the rule:

> "When a defendant moves to suppress evidence discovered following his warrant-based arrest on the grounds that the warrant was invalid because it was not supported by oath or affirmation, the state, in turn, is faced with two choices—to defend the arrest as supported by a valid warrant, or, alternatively, to present and prove a case that the arrest was valid as a warrantless arrest supported by probable cause. When the state chooses to proceed on the first

theory, the state must produce the warrant. Once that initial showing is made, the burden shifts to the defendant to prove that the warrant was in fact invalid."

*Id.* at 262-63. Because the state had neither produced the warrant nor proved that the arrest was lawful as a warrantless arrest supported by probable cause, we concluded that the trial court erred in denying the defendant's motion to suppress. *Id.* at 263.

Following our decision in *Perrodin*, we requested that the parties to this appeal arrive at oral argument prepared to address that case. In response to that request, defendant argues that this case is similar to *Perrodin*—the parties only litigated the validity of the warrant and the state never raised a warrant exception theory in arguing that the arrest was lawful. The state, on the other hand, contends that our decision in *Perrodin* reaffirmed *Dodge* and allows a lawful arrest to be based only on an officer's objectively reasonable belief that a valid warrant authorizes the arrest.

Turning to our consideration of the issues on appeal in the instant case, we readily conclude that defendant's arrest was unlawful. Article I, section 9, directs that "*no warrant shall issue but upon probable cause*, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized." (Emphasis added.) The four corners of the probation violation report, filed as the support for the state's motion for an order requiring defendant to appear and show cause why her probation should not be revoked, clearly established that defendant's probation expired on January 18, 2019. Therefore, at the time that the court issued the show cause order and subsequent warrant for defendant's arrest, there was not probable cause to believe that defendant had committed a violation of her probation, because she was no longer a probationer under the court's statutory authority and was no longer subject to the probation conditions that she pay supervision fees and restitution. The court lacked probable cause to believe that defendant was in violation of those conditions of her probation when defendant was, in fact, no longer on probation, and the subsequent arrest warrant therefore lacked

a constitutional basis. *See* ORS 137.545(2) ("*At any time during the probation period*, the court may issue a warrant and cause a defendant to be arrested *for violating any of the conditions of probation*." (Emphases added.)).

Further, we reject the state's reliance on *Dodge* in arguing that defendant's arrest was nevertheless lawful even absent a valid warrant. Although our decision in *Perrodin* was focused on the respective burdens that apply when a defendant challenges the validity of his arrest warrant, our analysis in that case was nevertheless premised on the principle that the constitutionality of an arrest must be tied to one of two bases: First, an arrest may be lawful if supported by a constitutionally-sufficient warrant, or second, a warrantless arrest may be lawful under an exception to the warrant requirement if supported by probable cause. *See Perrodin*, 315 Or App at 262-63. When a defendant contends that her arrest was unlawful because it was premised on an invalid warrant, the state may choose to argue—as it did in *Dodge*—that the totality of the circumstances known to the officer supported probable cause to arrest the defendant even without a valid warrant. *See id.* at 259 (explaining *Dodge*). However, here, as in *Perrodin*, the state never argued that defendant's arrest was lawful even if the arrest warrant was invalid—in other words, the state never raised the theory that the arrest was a lawful warrantless arrest supported by probable cause.[3] Instead, the state only defended the arrest by arguing that the probation violation warrant was valid, and the trial court correctly rejected that argument in concluding that it was not.

Having concluded that defendant's arrest was unlawful, we turn to whether the evidence discovered subsequent to that arrest must be suppressed. Whenever the state has obtained evidence following the violation of a defendant's Article I, section 9 rights, it is presumed that the evidence

---

[3] It is easy to see why the state did not argue that defendant's arrest was a lawful warrantless arrest supported by probable cause—indeed, Schwenninger had no information that would indicate that defendant had committed any crime absent the information he received from dispatch that there was a warrant for defendant's arrest. The evidence does not indicate that Schwenninger knew defendant, knew what the arrest warrant was for, or possessed any other information that could possibly support such a theory.

was tainted by the violation and must be suppressed. *State v. Unger*, 356 Or 59, 84, 333 P3d 1009 (2014). When a defendant has established that they were subject to an illegal search or seizure and challenges the validity of their subsequent consent to a search, "the state bears the burden of demonstrating that (1) the consent was voluntary; and (2) the voluntary consent was not the product of police exploitation of the illegal stop or search." *Id.* at 74-75.

We conclude that, even if defendant's consent was voluntary, it was the product of police exploitation of defendant's illegal arrest. In *Unger*, the Supreme Court articulated the exploitation test as inquiring whether "the police took advantage of information gained from their illegal conduct or some other aspect of that conduct to obtain consent—an advantage that they would not have had had the police stayed within the bounds of the law." *Id.* at 74. Specifically, the test considers "the totality of the circumstances, including the temporal proximity between that misconduct and the consent, and the existence of any intervening or mitigating circumstances," as well as "the nature, purpose, and flagrancy of the misconduct." *Id.* at 88. Here, Schwenninger would never have been in a position to search defendant's lunchbox but for her arrest on an invalid warrant. Defendant's arrest absent a constitutional basis was a severe constitutional violation, and her consent to the search occurred concurrently with that violation, with no intervening circumstances, as she was in police custody in the back of a police vehicle on her way to the jail. Defendant was entirely under police control. Further, defendant's unlawful arrest placed her in a position where Schwenninger had a distinct advantage in obtaining her consent compared to the situation that would have unfolded absent the unlawful arrest. Had defendant not been arrested and in police custody, she presumably would have had few if any motivations to consent to the search of her lunchbox. Once arrested, however, the only alternative available to defendant *besides* consenting to the search, assuming she did not abandon her possessions at the hospital, was to take the lunchbox with her to the jail, where it would be inevitably seized and searched as part of the booking process. Defendant's lack of meaningful choice in avoiding the search of her possessions was a direct

result of her unlawful arrest. Under those circumstances, Schwenninger's belief that he was executing a valid warrant, defendant's actions in calling Schwenninger back to the hospital, and Schwenninger's warning to defendant that she could withdraw her consent are insufficient factors to establish that defendant's consent was truly "independent of, or only tenuously related to, the unlawful police conduct." *Id.* at 86.

In conclusion, defendant was unlawfully arrested on an invalid warrant. As a result, the state had the burden to prove both that defendant's subsequent consent to the search of her lunchbox was voluntary, and that police had not exploited the illegal arrest to obtain that consent. The state failed to meet that burden, and the evidence must be suppressed. Defendant is entitled to withdraw her conditional guilty plea.[4]

Reversed and remanded.

---

[4] Under ORS 135.335(3), a defendant may enter a conditional guilty plea that reserves, in writing, the right on appeal "to a review of an adverse determination of any specified pretrial motion." A defendant who enters such a plea and "prevails on appeal may withdraw the plea." *Id.*